VAN BRUNT AND ANOTHER *against* SCHENCK.

THIS was an action of *trespass*, tried before the late *Chief Justice*, at the *New-York* sittings, on the 2d of *December*, 1813.

The declaration stated, that the defendant, on the 6th of *October*, with force and arms, &c. at the city of *New-York*, seized, took, and carried away, a certain schooner, or vessel, called the *Nancy*, &c. belonging to the plaintiffs, of the value of 2,500 dollars, and converted and disposed of the same to his own use, &c. The defendant pleaded the general issue.

It was proved, at the trial, that the schooner *Nancy*, owned by the plaintiffs, was seized by the officers of the government of the *United States*; that on the 27th of *October*, 1809, while the schooner was so under seizure, and in possession of the officers of the *United States*, he took the vessel, or directed his agent to take her, from the place where she lay, at *Coenties slip*, in the city of *New-York*, to go with her to *Hornes' Hook*, about eight miles from the city, and bring some furniture from the country-seat of the defendant to the city. That the vessel was accordingly taken, on the 27th of *October*, and was not returned to the place from whence she was taken until the 29th of the same month. It was proved, that the defendant, afterwards, acknowledged that the vessel was taken by his direction, for the purpose of bringing his furniture from the country; and that he offered to pay the plaintiffs for the use of the vessel, on that occasion, which the plaintiffs declined to receive, but referred the defendant to their attorney. The vessel, at the time of her seizure, was worth about 600 dollars. The defendant, at the time of her seizure, was one of the officers of the customs, at the city of *New-York*.

On this evidence being given, the defendant moved for a nonsuit, which was refused by the Chief Justice.

The vessel of A. was seized by B., an officer of the customs, under the revenue laws of the *United States*; who reported the seizure to the collector of the customs, who directed him to detain the vessel. While the vessel was thus under seizure, and in the custody of B., S., who was a surveyor of the port. and interested with the other officers of the customs, in all seizures, with consent of B. made use of the vessel in transporting his own goods, for two days, and then returned her again into the custody of B. at the place from whence she was taken. The vessel being libelled in the *instance court*, was sold by order of the court; and on hearing, afterwards, was acquitted, and the proceeds of the sale ordered to be paid over to A., who, however, declined to receive them.

The judgment of the court was accompanied with a certificate of probable cause of seizure, agreeably to the act of congress of the 2d of *February*, 1807 (*Laws of the United States, vol. 8. p. 255.*)

A. brought an action of *trespass* against S. It was held, that S., not being implicated in the first taking, either as an actor, or standing in such relation to B. as would make him a party in the act of seizure, could not be made a *trespasser ab initio*. That A. had not, after the seizure, and at the time that S. made use of the vessel, the possession of her, or a right to reduce her to his actual possession, which was essential to maintain an action of trespass. It *seems* that the leave given to S. by B. to take the vessel, and use her, would not make B. a *trespasser ab initio*, so as thereby to reinvest A. with his right of property, or right to reduce the vessel into his possession.

The defendant, then, offered to prove, that *William Van Beuren* seized the vessel, without orders from the defendant, and reported to the *collector of the customs*, Mr. *Gelston*, what he had done, who directed *Van Beuren* to detain the vessel; that the defendant made use of the vessel, as above stated, with the permission of *Van Beuren*, and with the knowledge that she was so seized. That the vessel was, afterwards, libelled and sold by order of the district court of the *United States*, and was, afterwards, acquitted, and the proceeds of the sale ordered to be paid to the plaintiffs. The defendant offered to show these facts, by the judgment and decree of the district court; and, also, that a certificate of probable cause had been given.

The Chief Justice rejected the whole of the evidence offered by the defendant, as inadmissible, either in justification, or in mitigation, of damages; and ruled, that the improper use of the vessel by the defendant, while she was under seizure, and in the custody of the officers of the government of the *United States*, rendered the defendant liable as a *trespasser ab initio*, and that he was answerable to the plaintiffs for the value of the vessel, at the time of the seizure; which opinion was excepted to by the defendant's counsel.

The only evidence admitted by the Chief Justice being as to the value of the vessel, the point was submitted to the jury, under his charge, and the jury found a verdict for the plaintiffs for 600 dollars.

A motion was made to set aside the verdict, and for a new trial, on the ground of the misdirection of the judge.

*C. Baldwin*, for the defendants. It was not proved, at the trial, that the defendant made the seizure, by himself, or his agents, directly or indirectly. On the contrary, the defendant offered to prove that *Van Beuren* made the seizure, without any direction or authority whatever from the defendant; and having made report to his superior officer, the collector, he confirmed the seizure, and ordered the vessel to be retained. The *collector*, then, not the defendant, was the person against whom the plaintiffs should have brought their action. Because the defendant is an officer of the custom-house of the *United States*, it does not follow that the seizure was made by him or his agent.

ALBANY,
August, 1814.

VAN BRUNT
v.
SCHENCK.
* Putnam v.
Wyly 8 Johns.
Rep. 432.

To maintain *trespass*, the plaintiff must show that he had the actual or constructive possession of the thing, at the time the trespass complained of was committed.* Now, at the time of the alleged trespass, the vessel was under seizure, by order of the *collector*, and was in the custody of the law, as forfeited. The plaintiffs had neither the actual, nor the constructive possession of the vessel, nor any right of possession, capable of being reduced into an actual possession.

But it will be said that the act of the defendant, being unlawful, has relation back to the time of the original seizure, and that by such relation, the plaintiffs were constructively in possession of the vessel. This doctrine of relation, so as to make a party a trespasser *ab initio*, applies only in cases of taking cattle *damage feasant*, or abusing a *distress*, in which case the property is held as a *pledge* merely, and the title of the owner or tenant is not devested. But in a case like the present, of a seizure for forfeiture, under the revenue laws, the title of the owner is immediately devested, and wholly gone from him, until a decree of restitution. The title of the government, or of its officer, arising from the forfeiture and seizure, is not affected by any abuse of the property, in the intermediate time. So that the doctrine as to trespassers *ab initio* does not apply.

If a decree of restitution is made, the original owner may have his action against the person who made the seizure, for any injury done to the property seized. If, however, the decree of restitution is accompanied with a certificate of probable cause of seizure, the officer cannot be made liable in an action of *trespass*, though, perhaps, an *action on the case* might lie against him for any abuse of the thing, while under seizure.

By the eighty-ninth section of the law of the *United States* for the *collection of duties*, passed the 2d of *March*, 1799,† it is declared, that when any prosecution shall be commenced, on account of the seizure of any ship or vessel, &c. and judgment shall be given for the claimant or claimants, if it shall appear to the court before whom such prosecution shall be tried, that there was a probable cause of seizure, the court shall cause a proper certificate or entry thereof to be made, and, in such case, the claimant shall not be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to any action on account of such seizure or prosecution; *provided* the ship, &c. be, after judgment, forthwith returned to the

† Laws U S.
vol. 4. p. 279.

ALBANY,
August, 1814.

VAN BRUNT
v.
SCHENCK.

\* *Laws of U.
S.* vol. 8. p.
255.

claimant or his agent. A general clause, to the same effect, re-lative to all seizures under the authority of the *United States,* is contained in the act of the 2d of *February,* 1807.\*

*Brinckerhoff* and *Wells,* contra. It is a notorious fact, that the defendant, who is *inspector* of the customs, is the *seizing officer* of the government in this port, and it was so stated in the libel filed in the district court. If he is not to be made liable in this case, what is to become of all the doctrine as to trespas-sers *ab initio,* and that in *trespass* all are principals? It is con-ceded by the defendant's counsel, that if *Van Beuren* had abused the thing seized by him, he would have been a trespas-ser. Now, where is the difference whether the thing is abused by him, or, under his permission, by the defendant, with full knowledge of the seizure, and of all the circumstances? The defendant, acting with all that knowledge, must be deemed in the place of the person making the original seizure.

The general principle of law on this subject is, that wherever a person, who first acts with property under an authority or license given by law, afterwards abuses that authority or license, he becomes a trespasser *ab initio.*†

† *The Six Car-
penters' Case,* 8
*Co.* 146. *Oxley
v. Watts,* 1
*Term Rep.* 12.
*Read v Harri-
son,* 2 *Bl. Rep.*
1218. *Phillips
v. Bacon,* 9
*East,* 298-303.
‡ 6 *Bac. Ab.*
559. *Trespass,*
(B.)

Though an abuse of an authority in fact, does not make the party a trespasser *ab initio ;* yet, in the case of an abuse of an authority given by law, in order to save persons who are the object of it from abuse, the law makes every thing done by him void, and leaves him in the same situation as if he acted wholly without authority.‡ This is a salutary and just principle, found-ed on the maxim that the law wrongs no man : *Actus legis ne-mini faciat injuriam.*

In the cases cited, the tortious act of the *bailiff* did not affect the rights of the *lord ;* nor the acts of the sheriff the rights of the creditor. The government of the *United States* might have gone on to have the vessel condemned, for having violated the law ; but this would not affect the rights of the plaintiffs against an officer who has abused the authority given by law, and is, therefore, liable, as if he had no authority.

If, then, the defendant was a trespasser *ab initio,* he is answer-able for the value of the thing, at the time of its seizure.§

§ *Woodham
v. Gelston,* 1
*Johns. Rep.* 134.
*Attersol v. Ste-
vens,* 1 *Taunt.
Rep.* 183.

The defendant, if he pleases, may take the proceeds in the admiralty court to his own use. By the recovery of the value of

The vessel against him here, the property will be transferred, and he will have a right to the proceeds.*

The certificate of probable cause was properly rejected by the judge, because it ought to have been pleaded. Where a party claims the benefit of an act, he ought to show that he has complied with its provisions. The defendant should have shown that the proceeds, in this case, had been paid to the plaintiffs.

*ALBANY, August, 1814.*

VAN BRUNT
v.
SCHENCK.

* 6 *Johns.*
*Rep.* 169.

*Baldwin,* in reply, said, it was true that the abuse of the thing taken might make the party a trespasser *ab initio,* but that doctrine did not apply to the case of a seizure for a forfeiture by an officer of the government. For, by the forfeiture, the original owner being devested of the property, the government might maintain an action for it; and if the plaintiffs might also bring their action, the defendant would be subject to two suits for the same act, which could not be.

The defendant did not make the seizure; the action, if any can be maintained, should have been against *Van Beuren,* for his negligence in suffering the defendant to make use of the vessel, while under seizure.

We admit that the defendant is the *surveyor* of the port, and the seizing officer, and that he was interested in the seizure, but he is, in all things, subject to his superior, the *collector.*

We insist, that the defendant, as well as *Van Beuren,* are protected from any action of trespass, by the certificate of probable cause, though they may be liable to an action on the case for the abuse of the thing.

Under the general issue, any thing may be given in evidence in mitigation of damages.

SPENCER, J. Being of opinion that an action of trespass cannot be maintained under the circumstances of this case, I shall confine myself exclusively to the consideration of that question.

The schooner was seized by *Van Beuren,* for a violation of law, and the defendant offered to show, that he gave no orders for that purpose, but that *Van Beuren,* after he had seized her, reported to the collector what he had done, who directed him to detain her. Whilst the vessel was lying under this seizure, and in the custody of the officers of government, the defend-

ant, who was one of the custom-house officers, with the leave of *Van Beuren*, and with the knowledge that she was thus seized, took her, made use of her for two days, and then returned her to the place from whence she was taken. It was ruled at the trial, that the improper use of the vessel, while under seizure, and in the custody of the officers of government, rendered the defendant liable for the original seizure, and made him a trespasser *ab initio*, and subjected him to damages, to the value of the vessel at the time of her seizure.

There are no facts implicating the defendant as an actor in the seizure of the vessel, or which show the least coöperation by him in that act, any further than the general fact, that he was one of the custom-house officers.

It cannot be pretended, that the custom-house officers are liable for the acts of each other. Between them, the relation even of master and servant does not exist; and if it did, and the defendant was the superior, which he clearly was not, the acts of *Van Beuren*, without his knowledge or assent, either before or after the act, would not make him a trespasser. " If my servant, without my notice, puts my beasts into another's land, my servant is the trespasser, and not I." *Kiel.* 3. c. 20 .*Viner*, 460. (2. p. 1.)

But it is insisted, that the schooner being in the custody of the law, the use or abuse of her, by the defendant, though with the license of the officer who took her, rendered the defendant, and all concerned, trespassers *ab initio*, and that, therefore, the plaintiffs can maintain trespass against the defendant.

This point is not defensible, unless the defendant is implicated in the first taking, and that he is not the facts plainly show. In every case to be met with in the books, the court, in considering who shall be deemed a trespasser *ab initio*, for the abuse of a legal trust, confine the action for such an act, to those who were either the actors in the first taking, or to such as by the relation they stood in to the first takers, made themselves parties, by their assent before or after the act. It would be palpably absurd to say, that a man totally unconcerned with the original caption of goods, shall, for an after act to those goods, be deemed to have originally taken them. Such absurdity and bad logic is not chargeable to our law. On a point so clear I have not thought it necessary to refer to the numerous cases and elementary writers on the action of trespass.*

* 1 *Chitty's Pl.* 173.

Still, however, it is contended that *Van Beuren*, having no right to use the vessel, could impart none ; and the plaintiffs having the general property, possession followed it, and that both uniting, they could maintain trespass against the defendant, and more especially, as the defendant knew the vessel was under seizure.

It is, undoubtedly, a well-settled rule, that to enable a party to maintain trespass, whether upon lands or on goods, he must have either the actual or constructive possession, at the very time of the commission of the injury. This point came under full consideration in *Putnam* v. *Wyley*. (8 *Johns. Rep.* 432.) We there approved of the decision in *Ward* v. *Macauley*, (4 *Term Rep.* 483.) and said, " that case was no more than a recognition of the settled principle, that a plaintiff cannot bring trespass for taking a chattel, unless he has the actual or constructive possession *at the time*. He must have such a right as to be entitled to reduce the goods to actual possession when he pleases."

In the case of *Ward* v. *Macauley*, Lord *Kenyon* said that the distinction between trespass and trover was well settled. The former is founded on possession ; the latter on property ; and he held, that as the plaintiff had no possession of the chattels, when the supposed trespass was done, his remedy was by action of *trover*, founded on his property in the goods; and in *Gordon* v. *Harper*, (7 *Term Rep.* 11.) he retracts that part of his opinion, that *trover* would lie under the circumstances of the case, but confirms his former opinion in every other respect.

When the defendant took the vessel, the plaintiffs were clearly dispossessed of her; nor had they then a right to reduce her to actual possession, for she had been seized under the authority of the law, and was then in the custody of the law, adversely to the plaintiffs' claim of property. Still, however, it is urged, that *Van Beuren* was, at all events, a trespasser *ab initio*, by his licensing the defendant to use the vessel, and that this act reinvested the plaintiffs with their first right of property, and also the right to reduce the vessel to their immediate possession ; and it is, consequently, contended, that the rule laid down in *Putnam* v. *Wyley* is not infringed by sustaining this action. It seems to have been forgotten by the counsel who urged this argument, that *Van Beuren's* giving leave to the defendant to take the vessel, is not an act which would even render him a tres-

passer *ab initio*. It was the act of taking her and using her, which alone could produce that effect; and not until after the commission of that act, would *Van Beuren* have violated the authority given him by law to seize and hold the vessel. The act of taking and using the vessel is indivisible; when the defendant first entered on it, it must be admitted the plaintiffs had neither the *possession* nor the right to reduce the vessel to their possession, and, therefore, at that time, they had no right to bring trespass. To maintain that trespass would lie against the defendant, the counsel must be driven to the necessity of splitting up the defendant's act, and making him a trespasser, not for entering on board the vessel and casting off her fasts, but for sailing in her. This mode of considering and treating the action, may well be pronounced an anomaly in the law of trespass, without precedent, and without authority. The true and only test is, to consider whether, when the first act was done, which consists of a series of acts, the defendant was guilty of trespass towards the plaintiffs. If he was not, then he cannot in this case be so afterwards. It is not necessary to consider how far the defendant might be a trespasser, if he had afterwards wilfully destroyed the vessel. That is not this case.

I might stop here, resting on the decision of this court, in *Putnam* v. *Wyley*, but as the counsel argued this cause with a zeal which I by no means disapprove, I will see whether, in deciding that this action is not maintainable against this defendant, we do not decide in strict conformity with general and well-settled principles.

" Trespass does not lie for goods which a man has lawfully, though the possession of him from whom he had them was wrongful: as if *A.* takes the horse of another and sells it to *B.,* trespass does not lie against *B.*" (*Com. Dig. Trespass, D.* 396.) " If a man takes my horse by force and gives it to *S.,* or if *S.* takes it from him with force, in this I shall not have trespass against the second offender, for the first offender had gained property by the *tort;*" per *Brian* and his companions. (*Br. Tres.* 358. 20 *Vin.* 462. *R.* 3. p. 1.)

In *Case* v. *Goes,* (3 *Caines' Rep.* 261.) the plaintiff sued the defendant for cutting and carrying away logs, after notice of title, and after being forbidden. The defendant justified under a license from one *Bull,* who, at the time of the trespass, was in possession under a writ of restitution, awarded on an indictment

against the plaintiff for a forcible entry, which was afterwards quashed for irregularity, and re-restitution awarded. The point was, whether the defendant was answerable to the plaintiff in trespass, for an act done whilst he was out of possession, notwithstanding the defendant had full notice of the plaintiff's title, and was forbidden. The court unanimously held, that trespass would not lie. *Bull* was considered a trespasser by relation, and answerable for the damages ; and with respect to the doctrine of relation, it was held that it should not extend to strangers, but applied only to the same parties, and annulling an act, *ab initio*, to advance a right; that the defendant's being warned could not affect the question, and it was enough that *Bull* was in possession.

This case fully shows, that the doctrine of relation is not to be extended to the defendants; and it bears strongly on the point, that the plaintiff cannot maintain trespass for an act done whilst he was dispossessed of his vessel, by legal authority, and with the leave of the person holding possession. It may be objected that it is inapplicable to trespass *de bonis asportatis.* But I perceive no difference, in principle, between the two actions, as to the point now under consideration. In the case of personal property, if the general owner parts with the possession, and the bailee has a right to use the thing, the general owner cannot maintain trespass for an injury done by a stranger; the right of possession being in reversion.

So as to lands ; the lessor or party out of possession, if the lands be held adversely, cannot maintain trespass, because, in the one case, his right is reversionary, and in the other, it is suspended. We have carried the principle, as to real property, further than has been done in *England;* and we allow the owner to maintain trespass without actual entry, on the principle, that the possession follows the ownership, unless there be an adverse possession.

In whatever light, therefore, this case may be considered, the plaintiff cannot maintain the action ; and there must be a new trial, with costs, to abide the event of the suit.

THOMPSON, Ch. J. and YATES, J. were of the same opinion.

VAN NESS, J. Whether this suit can be maintained strictly on the principle that the defendant is a trespasser by relation,

it is not material to inquire; because I think he is liable, in this form of action, on another ground.

It has long been well settled, that actual possession is not necessary to enable the owner to maintain trespass or trover, as it respects personal property. It is otherwise, where the suit is brought for trespass upon real property. There the *gist* of the action is the injury to the possession; and unless the plaintiff was in actual possession at the time the injury was committed, trespass cannot be supported.

This rule has been rigidly adhered to, even in cases where it might have been dispensed with, without interfering with the reason upon which it was founded: as in the case of *Bennett* v. *Ward*, (3 *Caines' Rep.* 259.) *Campbell* v. *Arnold*, (1 *Johns. Rep.* 511.) *Tobey* v. *Webster*, (3 *Johns. Rep.* 463.) But for an injury done to a personal chattel, the person who has the general property, provided he is entitled to immediate possession, may support this action, although he has never had actual possession. The general property draws to it the possession so as to enable the owner to maintain trespass. And this rule holds even by relation; as in cases of executors and administrators, who may maintain trespass for an injury done to the goods of their testator, or intestate, after his death, and before probate or administration. So may a legatee, after the executor has assented to the legacy, for a trespass committed before such assent.

The law creates a constructive possession in the owner, in all these instances, sufficient to maintain the action. The only exception is, when the general owner parts with his possession, in such a manner as to give the bailee a right to use the thing, and where the right of possession rests in reversion only. (2 *Saunders*, 47. in note, and cases there cited. *Smith* and *another* v. *Miller*, 1 *Term Rep.* 475. *Gordon* v. *Harper*, 7 *Term Rep.* 9.)

In the case of *Ward* v. *Macauley*, (4 *Term Rep.* 489.) Lord *Kenyon* expressed an opinion, that there was a distinction between the actions of trespass and trover; that the former was founded on possession, and the latter upon property; but in *Gordon* v. *Harper*, a few years after, he retracted this opinion, to which he acknowledged, upon further consideration, he could not subscribe.

The plaintiffs, in this case, were the undisputed owners of the schooner, until she was unlawfully seized by *Van Beuren.* I say *unlawfully,* because, as she was acquitted in the district court, were it not for the certificate of probable cause, *Van Beuren* might have been prosecuted as a trespasser for the original taking. This certificate, however, can, in no way, protect either *Van Beuren* or the defendant against an action for their illegal use of the vessel after the seizure. That *Van Beuren* became a trespasser, from that moment, *ab initio,* is not questioned. The cases cited on the argument are decisive on that point. The certificate of probable cause would afford him no protection against an action of trespass founded upon the abuse of his authority. " When the law has given an authority or license, it seems reasonable that the same law should, in order to secure the persons, who, without their direct assent, are made the objects thereof, from all positive abuse of such authority or license, make the same void from the beginning, and leave the abuser thereof in the same situation as if he had acted without any authority or license." (6 *Bac. Ab.* tit. *Trespass, B.*) I cite this book, because in no other is the law, on this subject, laid down with equal precision and accuracy.

From the moment, therefore, *Van Beuren* lent this vessel to the defendant, his official character was lost, and he is to be treated like any other private individual, who wantonly and illegally wrests from another his property. The law will adjudge, by the subsequent tortious act, *quo animo* the first taking was made; for, *acta exteriora indicant interiora secreta.* (*Six Carpenters' Case,* 8 *Rep.* 145.)

This being the situation in which the law has placed *Van Beuren,* let us see how the defendant stands, who is also a custom-house officer. He had, it appears, a country seat, about eight miles from the city of *New-York,* from which he was desirous to remove the furniture to his town house; and for this purpose he applied to *Van Beuren* for the use of the plaintiff's schooner, who consented that he might take her. The defendant, accordingly, brought his furniture in the vessel, from his country seat to the city, and employed her, in plying between the two stations, for about two days; well knowing that *Van Beuren* had no other right to the vessel than what he derived from the original seizure, and knowing also, (for every

man is presumed to know the law,) that he was guilty of a wrong to the plaintiffs, when he made use of their property for his own private purposes and accommodation, without their consent.

The vessel ceased to be in the custody of the law, after *Van Beuren* had parted with her to the defendant, for a purpose utterly repugnant to his duty, as a public officer, and by which *he*, confessedly, became as much a trespasser as if he had acted without any authority or license from the beginning.

While this vessel was in the employment of the defendant, he held her by wrong, and the plaintiffs had a clear and incontestable right to resume the possession of her, if they were disposed to exert it, wherever they found her. This right results as a direct and necessary consequence of that principle of law by which *Van Beuren* is deemed to be a trespasser *ab initio*. He stands " in the same situation as if he had acted without any authority." Like every other trespasser, his possession was tortious; and the owner might, at his election, either have affirmed the possession and property in him, by bringing an action of trespass, or he might have brought *replevin*, to have the thing taken restored to him, and recover his damages for the first taking. This was so decided in the case of *Hopkins* v. *Hopkins;* (10 *Johns. Rep.* 369.) and the same doctrine will be found in *Bishop* v. *Montague*, (*Cro. Eliz.* 824.)

A moment's consideration will show, that if the plaintiffs were entitled to the possession as between them and *Van Beuren*, they are equally so as between them and the defendant. What *right* had *he* to the possession of the vessel? If the plaintiffs could have taken her from *Van Beuren* after he became a trespasser, does it not follow, that they had the same power after she came into the hands of the defendant, in consequence of an act flagrantly illegal, to which both he and *Van Beuren* were parties?

It seems to be admitted, that the defendant is bound, in some form of action, to compensate the plaintiffs for the use of the vessel. Does not this demonstrate his possession of her to have been tortious and illegal? And here it is material to observe, that if a person is once liable as a trespasser for an illegal taking of the goods of another, he shall answer for their full value, unless they are restored *to the owner ;* in which case

the restoration may be given in evidence, in mitigation, but not in *bar* of the suit. I can see no reason, therefore, why the defendant, as well as *Van Beuren,* is not liable, in this form of action, for his illegal and unjustifiable use and employment of the vessel, as a distinct and independent trespass.

That she was not in the possession of the plaintiffs when the defendant took her, forms no objection to the established principles which I have before stated. In support and illustration of those principles, in addition to the cases already cited, I refer to *Bird and others* v. *Clark,* (3 *Day's Rep.* 277.) *Williams* v. *Lewis,* (*Ib.* 498.) *Lotan* v. *Cross,* ( 2 *Camp. N. P. Cases,* 464.) *Chapman* v. *Thumblethorp,* (*Cro. Eliz.* 329.) *and note to Wilbraham* v. *Snow,* (1 *Siderfin,* 438.)

If the principles upon which I have placed this cause are well founded, it follows that the judgment of the district court, and the certificate of probable cause, were both properly excluded.

With the order to pay the trifling sum which remained in that court, the plaintiffs have no concern. A recovery in this suit, if the vessel had not been sold, would have vested the title to her in the defendant; and as the money, in consequence of the sale, stands in the place of the vessel, the defendant probably would have a right to the proceeds.

The certificate, as I have before observed, protects the seizing officer from an action for the original taking only, and this protection is personal to him. It is no defence to this action, nor could even *Van Beuren* shelter himself under it, if the suit had been against him, he having, by his misconduct, put himself out of the provision of the act of congress. I acknowledge that this is a case not devoid of difficulty; yet, I think, the better opinion is, that *trespass* can be maintained against this defendant, and that, therefore, the verdict ought not to be disturbed.

PLATT, J. was of the same opinion.

New trial granted.