## WEBB v. HALEY & HALEY.

LAND LAW. *Grants. Ejectment. Trespass. Quare clausum fregit.* Where land is held by a grant from the State, and a discrepancy exists between the surveys by distance and the boundaries by natural objects, an action of trespass *quare clausum fregit* may be maintained by the grantee against one who claims the excess under a younger entry and grant, without actual occupation of the lapage when the trespass was committed, the act of 1819, ch. 1, sec. 29, having no application in such case, and ejectment is not necessary to entitle the plaintiff to protection from trespass under these circumstances.

Cases cited : Bowman v. Bowman, 3 Head, 48 ; Peeler v. Norris, 4 Yer., 331 ; Dodson v. Cocke, 1 Tenn., 314 ; The State v. Nashville University, 4 Hum., 157 ; Snoddy v. Kreutch, 3 Head, 302 ; West v. Lanier, 9

Webb *v.* Haley.

Hum., 771; Polk *v.* Henderson, 9 Yer., 311; .Whiteside *v.* Singleton, Meigs' R., 207; Simms *v.* Baker, Cooke's R., 146.

Act cited: Act of 1819, ch. 1, sec. 29.

FROM MADISON.

Appeal from the Circuit Court.

No counsel marked.

SNEED, J., delivered the opinion of the court.

This was an action of trespass *quare clausum fregit* in the Circuit Court of Madison county, resulting in a verdict and judgment for the defendants. The alleged trespass was in cutting timber on a small tract of land claimed by both parties. The plaintiff claimed under a grant of the State, based upon a part of warrant 2,573, dated May 26, 1792, issued to John Walters, who assigned a part thereof to Thomas Watt, to whom the grant issued for fifty acres on the 12th December, 1829. The grant recites the survey of said land on the 28th June, 1827, and gives the boundaries thereof by courses and distances, and by natural objects, marks, and monuments. This land was conveyed by the grantee, Thomas Watt, to the plaintiff by registered deed on the 6th April, 1857, under the same boundaries and discription as given in the grant, and the plaintiff took possession of the western portion thereof, claiming the whole to the extent of the boundaries of the deed and grant, the tract forming an oblong square of which the northwestern corner was the

beginning, according to the calls of the plaintiff's title papers. The defendants, ascertaining that there were seventy-four acres in the plaintiff's survey and grant, instead of fifty acres, so called for in entering a body of land south and east of the plaintiff's tract, entered about nineteen acres on the eastern end of the plaintiff's said oblong square, claiming the same to be vacant and unappropiated land. The entry and grant of defendants was in 1867, without notice to the plaintiff, and the defendants took possession of the southern part of their grant, but it is admitted that neither had actual occupation of the nineteen acres where the alleged trespass was committed, but both cut timber now and then from it. The grant of the plaintiff, then, calls to contain fifty acres, and the distances of the several boundary lines make the area of fifty acres, but the corners and lines as surveyed, as shown by the old landmarks, marked lines and monuments, included seventy-four acres, so that the State, upon the mistake of its surveyor, had actually granted twenty-four acres more than was intended to be granted.

The Circuit Judge was of opinion that since the act of 1819, ch. 1, sec. 29, the facts do not present a case entitling the plaintiff to his action of trespass *quare clausum fregit;* that the surplus of land over and above fifty-five acres, or over and above the fifty acres called for in the plaintiff's grant, with ten per cent. superadded, was vacant land, and that the plaintiff must first bring his action of ejectment.

In this we think his honor was in error. It is

true that the act of 1819, ch. 1, sec. 29, declares that a survey which includes more than one-tenth more land than called for by the entry is a fraud upon the State, which is declared a misdemeanor in the surveyor who is indictable therefor. It further declares, that the surplus in such survey over and above one-tenth more than called for, shall be deemed vacant land, and subject to entry, but the act is silent as to the effect of such error when it has passed into a grant, the first and highest muniment of title known to our law: 2 Hay. & Cobbs Rev., 92. ·

We apprehend, therefore, that while the title lies in embryo in the mere primitive form of a survey, the provisions of the act of 1819, ch. 1, sec. 29, would apply, and prior to the issuance of a grant, any intervening enterer, by entering the excess, might obtain a valid grant therefor. But if the land has actually been granted upon the erroneous survey before any such intervention, then the matter is concluded as to third parties, and the State alone can complain, and in the absence of any special and appropriate proceeding for avoiding the grant of the excess, the right of the first grantee is the better right: *Bowman* v. *Bowman*, 3 Head, 48.

It is a familiar principle that if a grant has once passed the great seal it cannot be revoked unless by some legal proceeding: *Duncan* v. *Beard*, 3 Nott & McCord, 400.

Every grant of land issued in the form prescribed by law is presumed to be valid, and the burden of impeaching it is devolved upon the objector: *Patterson*

v. *Jenks*, 2 Pet., 216. The validity of such a grant cannot be enquired into in a collateral issue; nor can a party travel behind a patent in order to avoid it: *Jennings* v. *Whittaker*, 4 Mon., 50. If not void on its face it is not to be collaterally impeached: *Masters* v. *Eastes*, 3 Porter, 368; 2 Green's Crim. Rpts., 37.

Thus it is held that the issuance of a grant by the State regards the possession of the specific land in the grant, and actually transfers that possession, as well as the right and title, to the grantee as effectually and as completely, to all intents and purposes, as if livery of seizin had been made. The form of our State grants, the acts of assembly authorizing the issuance of them for the public lands, all of them contemplate that an absolute estate in fee simple upon their issuance passes to the grantee, giving him a perfect right and possession without actual entry, to as full an extent, and in as beneficial a manner, as the State itself held them, thereby attaching to the grantee all the legal remedies incident to such estate: *Peeler* v. *Norris*, 4 Yerg., 331.

It follows, that if the State itself had the right to protect itself against trespassers, when the land is granted such right is devolved upon the grantee, whose title draws to it, in legal effect, the actual occupation to the boundaries of the paper title, unless the land trespassed upon is at the time in the actual adverse possession of another, which is not the case here. And so it was held that in controversies between individuals the grant is evidence that all previous requisites of the law in relation to it had been complied

with. And this evidence is conclusive as to claims by entry or grant originating afterwards: *Dodson* v. *Cocke*, 1 Tenn., 314; *The State* v. *Nashville University*, 4 Hum., 157.

Now, according to the common law of England, where there is no wild land, and very little not in actual occupancy, in order to maintain this action one must have, not only an absolute or temporary property in the soil, but an actual possession by entry: 2 Cooley's Bl., 210.

But in this country, where there are such vast bodies of uncultivated and unenclosed lands, such a rule would be alike injurious and impraticable. Hence, title and constructive possession are alone requisite, and unless the land be actually held adversely by another, the title draws to it the possession to the extent of the boundaries indicated in the title deeds: *Snoddy* v. *Kreutch*, 3 Head, 302; *Wert* v. *Lanier*, 9 Hum., 771; 11 Johns., 385; 9 Yer., 311; *Polk* v. *Henderson*, 9 Yer., 310; *Cahoon* v. *Simmons*, 7 Ired., 189.

Thus the possession by the owner of a part of a tract of land is the possession of the whole tract, so long as no other person is in the actual adverse possession of any part. As soon as another takes possession of any part, either with or without title, the former possessor loses possession of that part, and cannot maintain trespass *quare clausum fregit*, for any act done in such part while he is thus out of possession: *King* v. *King*, 4 Dev. & Bat., 164.

These principles, without further elaboration, must be decisive of this case. The plaintiff holds the land

under a grant from the State for fifty acres, setting forth boundaries by distance and natural objects, by the first of which he has fifty acres, and by the latter seventy-four. In such a case the distances must yield to the marked lines and natural boundaries: Meigs, 207; Cook, 146. This title to the excess is conclusive against the defendant and all others except the State, and the title deed draws to it the constructive possession of the lappage and every other foot of the area included within the designated boundaries by marked lines and natural objects. The defendant claims under a younger entry and grant, without actual occupation of the lappage when the trespass was done. In such a case the act of 1819, ch. 1, sec. 29, has no application, and no action of ejectment is necessary to entitle the plaintiff to protect the land from trespass.

Reverse the judgment and award a new trial.