NORTHERN INSURANCE COMPANY OF NEW YORK, RESPONDENT, *v.* JOHN C. WRIGHT, APPELLANT.

*Surety — request that creditor will foreclose mortgage — neglect to comply with— effect of.*

The defendant being the owner of a bond and mortgage, dated September 28, 1869, for $4,400, $500 of principal being payable on January first of each year from date, assigned the same on September 26, 1872, guaranteeing that the security was sufficient for the payment of the amount thereof, and guaranteeing also the collection of the same. In January, 1873, several installments of principal being due and unpaid the secretary of the plaintiff, who then held the bond and mortgage under such assignment and guarantee, wrote to the defendant in regard to it. The defendant called at the office and notified the secretary that he wanted the company to foreclose the said mortgage. The company neglected to foreclose the mortgage until October 13, 1875. In the meantime a frame dwelling, worth $2,000, had burned down, and only $700 of insurance was received thereon.

A deficiency having arisen upon the sale, for which it was sought to hold the defendant liable, *held*, that the act of the company in failing, for more than two years, to foreclose the mortgage, after defendant had requested it so to do, relieved him from all liability for the deficiency which had arisen.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee in an action brought upon the following guarantee given by the defendant as administrator of Lucinda Wright, upon the assignment of a bond and mortgage given by Michael Langdon to defendant's intestate, to wit: "I, John C. Wright, do hereby guarantee that the said security is amply sufficient for the payment of the amount secured to be paid by said mortgage, and I hereby guarantee the collection of the said mortgage."

*McCartin & Williams*, for the appellant.

*J. Mullin, Jr.*, for the respondent.

TALCOTT, J.:

This is an appeal from a judgment entered on the report of a referee. The action is brought on a guaranty of collection on the assignment of a bond and mortgage. The bond and mortgage

assigned were dated on the 28th of September, 1869, and were to secure $4,400 of principal, payable $500 on the first day of January in each year thereafter with interest annually. The defendant held the legal title to the said bond and mortgage as administrator of Lucinda Wright, whose sole heir he also was. The plaintiff is the successor to the title of the Black River Insurance Company. On the 26th day of September, 1872, the defendant assigned the bond and mortgage to George F. Paddock and accompanied such assignment with his guaranty, that the security was sufficient for the payment of the amount secured to be paid by said mortgage, and a guaranty of the collection of said bond and mortgage; and on the 20th of October, 1872, Paddock duly assigned the said bond and mortgage and guaranty of collection to the Black River Insurance Company, the name of which has been changed to that of the plaintiff, under chapter 208 of the Laws of 1875. The defendant was a director of the Black River Insurance Company and a member of the executive committee of said board until January 4, 1874, but never attended any meeting of said board or said committee after February 3, 1873. Orrin C. Frost was the secretary of the Black River Insurance Company from its organization until January 4, 1874. In January, 1873, several installments of principal having become due on said bond and mortgage and remaining unpaid, Frost, as such secretary, wrote to the defendant in regard to the payments due on the mortgage, and requested him to see Mr. Langdon, the mortgagee, and have it paid. In response to that letter the defendant called at the office of the Black River Insurance Company, and then and there notified Frost that he wanted the company "to foreclose the said mortgage, and by due course of law." At that time there was a frame dwelling-house upon the mortgaged premises worth some $2,000, which was destroyed by fire in October of the same year. The building was insured for $1,000, but in consequence of a dispute as to the liability of the insurance company only $700 was paid upon the loss, which was paid to the Black River Insurance Company.

The Black River Insurance Company commenced a foreclosure of the said mortgage on the 13th day of October, 1875, and obtained a judgment of foreclosure and sale, and in and by the said judgment it was adjudged that there was due to the insurance company, as

assignee of said mortgage, the sum of $4,561.48 for its debt and $120.99 costs. The defendant was made a party defendant in that suit, but no personal claim was made against him. The referee finds that Frost never communicated to any of the other officers of the company the request of the defendant that the mortgage should be foreclosed.

Here was a delay of some two years and nine months, after the Black River Insurance Company had been expressly requested by the surety to proceed and enforce the collection of the demand against the principal, before any proceedings were commenced to that end, when the security was in all probability good for the amount then due and which would have become due while the foreclosure was in progress. It is well settled in this State that if a surety requests the holder to proceed and enforce his security against the principal, and he omits to do so within a reasonable time so that a loss occurs, the surety is discharged. (*King* v. *Baldwin*, 17 Johns., 384; *Remsen* v. *Beekman*, 25 N. Y., 552.)

But again. The action is upon a guarantee of collection, and no notice was necessary from the surety to the creditor requiring the latter to proceed with due diligence to collect the principal security. It is a condition precedent in such a case that the creditor shall diligently endeavor to collect the amount of the principal debtor, by exhausting the ordinary legal remedies for that purpose, and if he fails to do this the surety is discharged.

In *Keyes* v. *Tifft* (1 Cow., 98) it was held that the allowance of the lapse of one term after the debt became due without suit against the principal, discharged the surety.

In *Craig* v. *Parkis* (40 N. Y., 181) it was held that a delay of six months in foreclosing a mortgage after a payment became due, discharged the guarantor. (See, also, *Moakley* v. *Riggs*, 19 Johns., 69; *Loveland* v. *Shepard*, 2 Hill, 139.)

The referee seems to recognize this as the settled law, for he finds that the creditor was bound to proceed with due diligence to collect the amount due on the bond and mortgage as the same became due and payable, by process of law, "as a condition precedent to a recovery on said guarantee against the defendant," but he allows a recovery against the defendant upon the ground, as stated by him, that, "by his acts and negotiations with the officers of the said

insurance company and plaintiff, he waived a strict compliance with such condition precedent." We do not see in the case any sufficient evidence of a waiver on the part of the defendant of a compliance with the conditions precedent. It appears that in April, 1873, the mortgagor and obligor, wishing to remove from the premises, conveyed them to the defendant under an agreement that the defendant might sell them, returning to the mortgagor any surplus that should be obtained on the sale over and above the amount of the bond and mortgage held by the insurance company, to which mortgage the conveyance was made subject. The defendant did not, in any manner, assume the payment of the bond and mortgage.

It is said, too, that the defendant kept the fact that he had a conveyance of the premises concealed from the insurance company. The evidence, perhaps, tends to show that the defendant did not mention the fact of this conveyance to the officers of the insurance company, but fails to show that the conveyance was surreptitiously taken, or was intentionally concealed. It was put upon record in May, 1873, and the defendant was in possession, so far as anybody was (the mortgagor having left the farm and removed to another place). Besides, there was no reason why the defendant was bound to notify the insurance company of the fact of the conveyance. It was an arrangement, as appears, made by them for the convenience of the mortgagor, that if the defendant had an opportunity to sell the place, he might be in a position to convey without sending to the mortgagor for a deed.

The defendant resided in the neighborhood of the mortgaged premises, some sixteen miles distant from the office of the insurance company. The president of the company testifies that the defendant told him that the mortgagor was a poor man, and advised that the property be sold, and that he, the president, acquiesced in the plan and arranged with the defendant to negotiate a sale if possible, and frequently inquired if he had perfected a sale — to which, the defendant replied, that he had not and that he had written to one or two persons about it. In all this, we see no evidence of any intention on the part of the defendant to waive any of his rights as a surety, but his acts seemed to have been entirely consistent with a desire to have the matter so arranged, that both himself and the insurance company, should, if possible, be saved from loss.

We think there was no evidence of any waiver of the condition precedent ; especially as the defendant had made a special request that the mortgage should be foreclosed at once, and the company failing to take any measures for that purpose the defendant might well have considered himself discharged from his guaranty, and the acts and negotiations by him afterwards which have been adverted to, are, we think, not inconsistent with an intention of insisting upon the rules of law as applicable to his case. The question fairly arose on a motion for a nonsuit and on the exceptions to the decision. As this view, if correct, disposes of the case, we do not examine any of the other exceptions.

Judgment reversed and new trial ordered before another referee, costs to abide the event.

Present — TALCOTT and SMITH, JJ. ; MULLIN, P. J., not sitting.

Judgment reversed and new trial ordered before another referee, costs to abide the event.