1817.

| Mather *against* The Ministers of Trinity Church and others.

*Philadelphi-*

In Error.

*Monday,*
December 29.

ERROR to the Court Common Pleas of *Montgomery* county.

THIS was an action of trover, brought by the defendants in error, plaintiffs below, for the conversion of a quantity of stone and gravel. It appeared in evidence, that the plaintiffs and their predecessors, had been long in possession of a church, and a small parcel of land adjoining it. Part of this land was inclosed and used for a burial ground, ever since the year 1727; the remainder was uninclosed. Near the boundary line of the land claimed by the plaintiffs, was a stone quarry, out of which the defendant dug and carried away the stone and gravel, which were the subject of this suit. The defendant gave evidence of his having taken stone and gravel from the quarry for a considerable time. He denied, in the first place, that it was within the limits of the land occupied by the plaintiffs ; and contended, moreover, that if it were within these limits, still he had been so long in possession, that the plaintiffs could not recover in this action. The defendant insisted, also, that the plaintiffs could not maintain the action, because they had not shewn, that the title was out of the Commonwealth. The President of the Court charged the jury, that after so long a possession, a grant from the Commonwealth might be presumed. That if the defendant had an adverse and exclusive possession for twenty-one years, before the commencement of the action, the plaintiffs were barred ; but if the jury should think, that the possession was not exclusive, but in common, then the law would adjudge it to be in the party who had the best right, and in that case, if the quarry was within the plaintiffs' claim, the possession would be in them, as the defendant had shewn no other title than what arose from his possession. The defendant contended, also, that trover was not the proper action, even though the right to the land, was

After a possession of land for 90 years, in a thick settled part of the state, building a church on part of the land, and occupying part as a burial ground, a grant of the land, or at least, of a pre-emption right, from the Commonwealth, sufficient to recover in ejectment, will be presumed. Where two persons are in possession of land, each claiming an exclusive right, the law adjudges the rightful possession to be in the one who has the right to the land. Trover for stone and gravel dug from land, does not lie by one who has the right of possession, against the person who has the actual adverse possession of the land, and sets up title to it.

*9 Watts, 172*

3 SR 509
213   3598
213   3599

1817.

MATHER
*v.*
The Ministers
of Trinity
Church
and others.

in the plaintiffs. The defendant excepted to the charge of the Court.

*Kittera,* for the plaintiff in error, contended, that trover was not the proper remedy. To support trover, there must be possession actual, or legal ; but if the property is carried away immediately, there is no possession to support the action. 1 *Burr.* 31. *Chitty, on Pl.* 150. The severing of a thing from a freehold, as taking down the door of a house, is not a conversion ; for a conversion can only be of a personal chattel. 6 *Bac. Ab.* 679. *Cro. Jac.* 129. Title out of the Commonwealth ought to have been shewn. The reason given by the President of the Court below, that neither party shewed title out of the Commonwealth, is not sufficient ; because the plaintiff must shew title in himself, before he can recover.

*Wallace* and *Binney,* contra.

There was proof of possession for near one hundred years. That was a sufficient ground to presume a grant from the Commonwealth. Digging coals in a pit and throwing them out of it, is a conversion. 6 *Bac. Ab.* 679. 1 *Jones,* 245. So is carrying away a tree which the party himself, or any other person, had cut down. 6 *Bac. Ab.* 679. *Noy,* 125. In trover, property is sufficient without possession ; therefore, on the trial of an ejectment for a mine, it was holden, that a recovery in trover, for a parcel of lead dug out of the mine, was no evidence of the plaintiff's possession. *Bull. N. P.* 33. *Lord Cullen's case.*

TILGHMAN C. J. 1. I fully agree with the President of the Court of Common Pleas, that the possession proved by plaintiffs, was sufficient to recover in an ejectment, and sufficient for a presumption, that the Commonwealth had either granted the land, or at least, *a right of pre-emption,* to the predecessors of the plaintiffs. And supposing it to be only a a right of pre-emption, that is good title against all persons but the Commonwealth. The compliance with the terms of pre-emption, is a matter between the Commonwealth and the occupier. A third person has nothing to do with it. There is no absolute time prescribed by law; on which to found this kind of presumption. Circumstances may require, in different cases, a different length of time. The

circumstances in this case, are very strong, The land lies in the midst of a very thick settled county, where it is extremely valuable. The possession has been too notorious, to be unknown to the officers of the late proprietaries. No kind of possession can be more notorious than the building of a church, and using it for public worship, and the occupation of an adjoining piece of land, for a burial ground. The remainder of the ground, being uninclosed, is no objection to the possession of the whole. It is the common usage, to leave a piece uninclosed, for the free passage of the congregation, and the accommodation of horses and carriages. Considering the object, the possession was complete. It was all that the nature of the case required. And the length of time (90 years) is so great, that it is not to be accounted for, without supposing a grant, or the promise of a grant, which would establish a right of pre-emption.

2. I agree also, that where two persons are in possession, the law adjudges the rightful possession to be in the one who has the right to the land. Therefore, although this quarry was occasionally used by the defendant, yet if it was within the plaintiff's lines, the law would adjudge the rightful possession to be in the plaintiff. It was possible, indeed, for the defendants to have had an *exclusive* possession, and that was a matter very properly submitted to the jury.

3. Although from the evidence in this case, as we have it mentioned in the Judge's charge, I can have no doubt of the right of the plaintiffs, to recover in an ejectment, yet there is one particular, in which it appears to me, that the law was laid down inaccurately, and the jury may have been misled by it. I understand the substance of the charge to be, *that although the jury should be of opinion, that the defendant had the exclusive and adverse possession of the land from which the stones were taken, for any time less than 21 years, yet the plaintiff might recover in this action of trover*. This is not the proper form of action, to try the title of land, nor have I been able to find any case where it has been sustained for that purpose, although there are many cases, where it has been brought for the conversion of *wood*, *coals*, &c. when the right of the freehold was not claimed by the defendants. The inconvenience of trover to decide the title of the land would be great; for, being a transitory action, the trial might be transferred to a distant county, or even to a

1817.

MATHER
*v.*
The Ministers
of Trinity
Church
and others.

1817.

Mather
v.
The Ministers
of Trinity
Church
and others.

distant state, if the defendant should happen to be found there. Neither do I find any case, where trover has been supported, when the possession of the land was held adversely to the plaintiff. [There is a case, which although at first it may appear something like an action of trover against an adverse possession, yet it may be plainly distinguished from it. I mean, the case of *Player v. Roberts*, 1 *Jones*, 243, (cited in 1 *Vin. Ab.* 237, *pl.* 7,) A, the lord of a manor, leased to B, all the coal and coal mines, open, or to be found, in the manor. C, was a copyholder of parcel of the manor, for term of his life. A, entered on the copyhold, during C's life, and dug coals, which he converted to his own use. B, recovered against him in trover, although neither A, nor B, could enter into the copyhold, without being trespassers. But, it must be remarked, that the title, and possession of the copyholder, were not adverse to B, because he claimed no right to the coals ; so that, although B, could not have entered to dig those coals, yet being dug, A, did him wrong in converting them to his own use, because A, had leased to to him all the coals in the manor. There was no contest about the title of the land, but only about the coals. The title was confessed by both A, and B, to be in C, so that between A, and B, it was proper to consider the possession of the coals as in B. So, in the other cases, where trover has been brought for *wood*, it will be found, on analysing them, that the title to the land was not in question. There is a *dictum* in many books, that *possession is not necessary for the support of an action of trover.* I think it will be found, that this broad assertion is not true, if taken in its full extent, and without qualification. On the contrary, we find it laid down in 5 *Bac. tit. Trover, C.* (p. 258, and 280, of the folio ed.) that no person can maintain trover, unless he has had a possession of, as well as property in, the chattel, for the conversion of which the action is brought. And this principle, when explained, appears to be the law. The explanation is, that he who has the *general* property in a personal chattel, need not prove possession, because the law draws the possession to the property. But he who claims only a *special* property, must prove, that he once had *actual* possession, without which no special property is complete.] That the law draws the possession to the property, of personal chattels unconnected with land, may be true, and yet it does not fol-

low, that the possession is drawn in like manner, to the property of that kind of chattel, which was part of the soil, until severed from it; when the soil itself, at the moment of severance, was held adversely by another. I should rather suppose, that in such case, he who had possession of the land, had possession also of the stones dug from it, and against him, another person who had the *right to the possession of the land*, could not support trover. He certainly could not support *trespass*. But he would not be without remedy; for he might first resover the possession by ejectment, and then recover the *mesne* profits in an action of trespass. Upon the whole, as I find no authority for supporting an action of trover, by him who has the right of possession, against him who has the actual and adverse possession, and sets up title to the land, and, as it appears to me, that many inconveniences might flow from such an action, I am of opinion, that the charge of the Court of Common Pleas, is, in that respect, erroneous, and, therefore, the judgment should be reversed, and a *venire facias de novo* awarded.

Gibson J. was absent.

Duncan J. This is a question of some novelty, involves important principles, and is not without its difficulties.

The action is trover, for the conversion of stones and gravel taken by the defendant below from a lot of land claimed by the plaintiffs. This action is in substance a remedy to recover the value of personal chattels, wrongfully converted by another to his own use. The plaintiff must have a property in the chattel, general or special, and the actual possession, or the right to the immediate possession. In the case of personal property, the general property creates a constructive possession which will be sufficient. The common form of declaring shews, that the plaintiff must prove either an actual or a virtual possession. He declares, that being possessed he lost the goods. The constructive possession of goods follows the property. But this is not so as to lands. Where the possession is vacant, trespass will lie against a wrong-doer; it is the close of him who has the right. It has long been a settled point, that the owner of wild and uncultivated lands is to be deemed in possession so as to maintain

1817.

Mᴀ́ᴛʜᴇʀ
*v.*
The Ministers
of Trinity
Church
and others.

1817.

MATHER
v.
The Ministers
of Trinity
Church
and others.

trespass; the possession of such property so continues, until an adverse possession is clearly made out. *Jackson* v. *Sellick,* 8 *Johns.* 262. Where the possession is vacant, it nevertheless is the close of him who has the right, and for violating that right, trespass is the proper remedy. *Van Rensselaer* v. *Van Rensselaer,* 9 *Johns.* 377. 1 *Chitty,* 176. Legal seisin carries with it the possession, unless there be adverse possession. *Proprietors of Kennebeck* v. *Call,* 1 *Mass. Rep.* 484. In *Pennsylvania,* a regular authorised survey gives such seisin and possession as that the owner may maintain trespass against an intruder.

As to lands, the party out of possession if the land be held adversely, cannot maintain trespass; the possession follows the ownership, unless there be an adverse possession. *Van Brunt* v. *Schenck,* 11 *Johns.* 385. The plaintiff must in trover not only shew property, but must also shew, that he had at the time the actual possession, or at least a virtual possession; but if he had a right to the possession this is implied by law. 6 *Bac. Ab.* 682. 706. Possession is deemed requisite. In trover for bricks, the question turned on the possession of the brick yard. The Judge directed the jury, that if no possession of the brick yard had been taken and continued, such as was visible and notorious to the neighbourhood, the marking of part of the kiln of bricks and the memorandum for the lease would not amount to such possession as would enable the plaintiff to recover in this action. This instruction was on a motion for a new trial declared to be correct. *Allen* v. *Smith,* 10 *Mass. Rep.* 308. There is a natural distinction between real and personal property as to the right of the owner. General property draws to it, in the case of personal property, the possession sufficient to enable the owner to maintain trespass, though he has never been in possession. But in the case of real property there is no such constructive possession, and unless the plaintiff had the actual possession at the time when the injury was committed, he cannot maintain trespass. 1 *Chitty,* 150. 176. The property of personal chattels draws to it the possession; but not so of lands; and when the case of Lord *Cullen, (Bull. Ni. Pri.* 33,) so much relied on for the defendants in error, is considered with attention, it proves this and no more, that a recovery in trover for lead dug out of a mine, was no evidence of the plaintiff being in possession of the mine, and it is so considered by

Serjeant *Williams*, 2 *Saund.* 47, *a.* Certainly, a man might have trover for lead dug out of a mine; he might have a property general or special in the lead, without having the actual possession of the mine out of which it was dug, necessarily. The record of the recovery in trover for the value of the ore did not establish the fact of his possession of the mine. It might be, that trover will lie where a stranger has entered into the lands of another in his actual possession, and committed trespass by digging his soil and carrying it away, and converting the gravel, so dug up, to recover the value of the gravel. A stranger entered into lands leased for life, and cut down timber trees and barked them, and the lessee before *seizure* brought trover for the bark and had judgment to recover, though the cutting down and barking were at one time. 20 *Vin.* 419. *Alleyn*, 82. In the case of *Udal* v. *Udal*, cited *per Curiam*, as a case which depended seven years between *Berry* v. *Heard*, reported in *Cro. Car.* 242, the principle decided is, that trover would lie for cutting down a timber tree, barking it, and carrying away the bark. So *Waller & Petty* v. *Sands, ibid.* 274, for cutting, carrying away, and converting two hundred loads of timber, and two hundred loads of wood. The lessor may maintain trover for the bark of trees cut. *Com. Dig. Biens H. Trees.* So, though the trees are converted into boards, for the principal substance remains. *Moore,* 19, 20. Though they are converted and carried away at the time of cutting, or afterwards. *Alleyn*, 82. Here it will be observed, that the possession of the trees was not adverse, and that immediately on the severance, the property and possession were both united in the owner of the inheritance.

It may be laid down with respect to this action, that it is in substance a remedy to recover the value of personal chattels, wrongfully converted by another to his own use; that it does not lie for injuries to land or other real property, even by a severance from the freehold, unless there be also an asportation; that if after severance from the freehold, as in the case of trees cut down, the property severed be taken away, or if coals dug from a pit be afterwards thrown out, this action will lie by the person having the right, and being in the possession, against a mere intruder and trespasser. But where one enters into land, claims title, and exercises acts of ownership such as these acts stated in this declaration,

1817.

MATHER
*v.*
The Ministers
of Trinity
Church
and others.

1817.

MATHER
v.
The Ministers
of Trinity
Church
and others.

that he is liable in this form of action, I very much doubt. Trover never can be the mode in which the title to freehold can be determined. They are actions of different natures, *diverso intuito*, not differing in form only, but in substance; one local, the other transitory. A verdict in one, cannot be received in evidence in another, between the same parties, as in Lord *Cullen*'s case, already stated. The title to land, can never be directly inquired into in a personal action; indirectly in a case over which the Court have jurisdiction, it may. The principal drawing after it all the incidents, it is indifferent where the land lies, be it in *Turkey* or *China;* the right to it coming incidentally before the Court in the trial of a personal action, of which its examination is necessary, and therefore may be inquired into. *Clark* v. *M'Intire, Addison,* 235. But here the right came directly before the Court, and was the primary object of inquiry. If the action could not be supported in another county than where the cause of action arose, this is decisive, for if trover could be supported the plaintiff could have brought the personal action any where. But in trover, all inquiry into the title of the freehold is precluded. In this, the plaintiffs must have made out the title, in order to a recovery; it must be the very first step; without proving the title to the land, they could not recover, for the taking and conversion of its separate clods, and the stones or gravel dug out of its bowels. *Liberum tenementum* could be no plea in trover, as it is in trespass.

That it will not lie against one in possession, and who has been in possession for a period short of twenty-one years, for the exercise of any act of ownership, the conversion of the natural or artificial produce of the soil or of the earth itself, or of its contents, appears to me a clear and settled principle. If it did, trover would lie during the pendency of an ejectment to try the title, and the *mesne* profits be recovered before the trial of the title in ejectment. The ejectment for the land might be tried in one Court, and trover for the product of the soil in another. There might be a recovery in trover for the productions of the soil, and the right to the soil itself, on the trial of the ejectment, be found in the defendant. I know not any redress by action the owner of land has against him in possession but by ejectment, and after the recovery in ejectment, and *habere facias possessionem* executed and possession

delivered, by trespass for the *mesne* profits. Advert for
one moment to the consequences; A man in *Philadelphia*
claims, say if you please, is the real owner, of lands in the
county of *Erie*. He finds the tenant in possession in this city;
can he sue him in trover for cutting down his trees, digging
up and converting his coals? If he could, he might do so, if
the lands lay in *Kentucky*. If he could, the title to lands, in
*Kentucky*, not indirectly but directly, could be decided in the
Courts in this city. Trespass *quare clausum fregit*, will not
lie for the owner out of possession; it will not lie in a foreign
county. Trover will not lie for taking away the soil, stones,
and gravel of the owner of the soil, against him who has an
adverse possession. It will not lie in a foreign county for
the exercise of such acts of ownership, because the Courts
there cannot try or decide the title. If it would not lie in a
foreign county on account of the nature of the inquiry being
local, it would not lie in the proper county, because if it
could be maintained, being a personal action, it would lie
any where, and it cannot depend on the plaintiff, at his elec-
tion, to make it local or transitory.

Without giving any opinion on the general question, how
far legal seisin of a part is to be considered as the possession
of the whole, to prevent the operation of the statute of limi-
tations, it is certain that if it be not, the adverse possession
must be certain, definite, notorious, continued by actual en-
closure. Where the possessor does not enter on any claim
of right, but is a trespasser and intruder, such possession by
intrusion ought not to go beyond the actual occupation and
*possessio pedis*. A wrong-doer can have no constructive
possession. The opinion of the Court below, had this been
ejectment, would appear to me correct, both as to the doc-
trine of possession, boundaries, and rights, and was left
as fairly on the question of possession as the defendant's
case would admit of. Indeed, I would go one step further
in favour of the plaintiffs, for I would consider the posses-
sion of a lot of ground of this extent, whose boundaries were
ascertained by surrounding surveys, and where the posses-
sion by the members of this religious society had been in
the only way in which it could be occupied for their accom-
modation, house of worship, burial ground, open ground for
the assemblage of the hearers, and a walk, during the inter-
val of worship, for horses and carriages, as entitling the so-

1817.

MATHER
*v.*
The Ministers
of Trinity
Church
and others.

1817.

MATHER
v.
The Ministers
of Trinity
Church
and others.

ciety to a pre-emption right under the laws and usages of *Pennsylvania;* thus, considering the land as not vacant, but the right to call for the legal title in the plaintiffs; the equitable title being in the plaintiffs, which is sufficient in *Pennsylvania,* to support an ejectment, and thus dispose of the objection of there being no evidence of the title being out of the state.

A possession was established, by testimony, of ninety years, as a burial ground; a possession, beyond which the memory of man runneth not to the contrary, to support which, every possible intendment ought to be made. So far as respects the rights of the parties, the charge was, in all respects, proper; but not so, as I consider the law, with respect to the remedy. " If the defendant was in possession for a period short of twenty-one years, this action could not be supported." It is this part of the charge which appears to me to be inaccurate. "The defendant has contended that, admitting the quarry to be within the original bounds of the church lot, he has become entitled to it by long possession of that part of the ground in which it was. If he, or those he claims under, have had adverse possession of that part of the land for twenty-one years before the action is brought, he is entitled to it." Thus, putting the right to recover, in this action, on the title of the parties, and not whether the plaintiff was in possession of the quarry when the injury, complained of, was done. In this I think there was error, and, for this reason I am of opinion that judgment should be reversed. I consider it the duty of Courts to preserve the boundaries of actions; and in this case I consider it would be not only a departure in form, but that it would amount to a substantial alteration of the very nature of this action.

Judgment reversed, and a *venire facias de novo* awarded.