The opinion of the court was delivered by
Huston, J.
Levi Feay, brought an action for money had and received against George Decamp, to recover back money paid on an article of agreement for the sale of a tract of land, on the ground that the contract was rescinded. The defendant, Decamp, demurred to the evidence, which was partly written, and partly parol. The only difficulty arose, perhaps, from the manner in which the evidence was brought before the Court of Common Pleas. In 1816, Levi Feay, had brought an action of covenant against Decamp, in which he insisted on the contract, and contended that it was not rescinded; that cause was brought to this court by writ of error; and decided, see 5 Serg. & Rawle, 323. To the record in that case, were attached certain depositions, and also’ the testimony of witnesses examined atthetrialof that cause; some of those witnesses were dead or removed from the state, and their testimony was read as found attached to that record, and it would seem to have been considered that this testimony was part of the record/and I suppose on the ground that whoever gives a record in evidence; must give the whole record in evidence, the counsel for plaintiff read all the evidence given in that cause, as well by plaintiff as by defendant, which certainly he was not bound to do. He gave the record in evidence to show a trial between the same parties, in order to *228 prove what a deceased witness swore at that trial; but the testimony given in the cause, though attached to the record, was not part of it, and he was not bound to read, nay could not legally read, such testimony in this trial, unless where the witness was dead or removed, or perhaps for some special purpose, as if one of defendant’s witnesses now examined, stated facts differently from what he did then.
The whole evidence of both parties being thus inadvertently brought before court by plaintiff’s counsel, the defendants demurred; and it'has been insisted, this court, in deciding, is to consider the whole of this testimony, and decide according to the weight of it.
The demurrer to evidence has in modern times been extended to cases to which, perhaps, our ancestors thought it would not apply; to cases depending on parol evidence, and where contradictory evidence had been given. It seems to be settled, that it may be applied to such cases; it is, however, a dangerous experiment. “He who demurs to parol evidence, (says Chief Justice Tilghman,) engages in an uphill business; for every fact is taken pro confesso, which the jury might, with the least degree of propriety' infer, from the evidence. The court is not nicely to weigh the evidence, and decide according to the turn of the balance; if that were the law, the trial by jury would be destroyed. It never was intended that by a demurrer to evidence, the court should become triers of the facts. This court. has had occasion to consider this subject maturely.” 3 Serg. & Rawle, 516. In that case the cause was decided on matters necessarily inferred from facts proved. In 7 Serg. & Rawle, 244, Morrison v. Berkey, it is said, “the demurrer to evidence is to be taken most strongly against him who demurs, and where it is to circumstantial evidence, his adversary may refuse to join in the demurrer, unless every fact is distinctly admitted on record, and every conclusion which the evidence offered, conduced to prove. So if the evidence conflict, the party demurring must admit that of his adversary tobe true, so far as it conflicts with his own; where he does join, the court act on the same principles, and may draw any conclusion which a jury, justifiably, may draw.”
So if the plaintiff in making out his .case, calls several witnesses to prove the same transaction, some of whom prove certain facts or declarations, and others state the same facts or declarations more strongly for the plaintiff, the defendant, by demurring to the evidence, admits these latter to be true; and so the court must take it, though a jury might believe the less favourable statement to be true., .
In the present case, Decamp had contracted by articles of agreement, dated 17th of August, 1815, to sell to Feay a tract of land, to make a deed on 1st April, then next, and then to give possession; “ and doth at the present date give said Feay liberty to make *229 neeessaay improvements on the farm, such as repairing fences, putting in á field of grain, &c.” Feay contracted to pay 4,000 dollars, as follows: 50 dollars in hand, 450 in a month, and 1,500 on first of next April, 8?c.
Feay paid the 50 and the 450 dollars, according to contract. On the 15th December, 1815, Feay leased the tract of land to Armstrong for two years, to commence on 1st April, 1816, and covenanted to give possession then. Decamp was the witness to this lease.
On the 3d of April, 1816, Feay and Armstrong came to Decamp. Feay had only 600 dollars; after some time they agreed by parol, that Decamp should receive that sum, and Feay was to pay 900, the balance of that instalment, on.the 6th of April, and said if he did not, Decamp might beep the land and money both. The witness, Bartlett, says, “ Decamp agreed to take the 600 dollars on the conditions plaintiff proposed, and on no other terms; that if the plaintiff did not pay him the balance of that payment on the 6'th day of the same month, the contract was to be void: to which the plaintiff agreed.” They further agreed, that Armstrong might move on the land, but if the money was not paid on the 8th, he was to go off on two da)^’ notice. Armstrong moved on the land and proved, “that Decamp said, if Feay did not pay the'money by such a time, he would spend every-cent of the place, before he would let him have any benefit of either the land or the money that was paid.” That after the 6th of April had passed, Decamp said he never would pay him the money, but would spend every cent of the place,.before he would let him have any benefit of the land or money; this conversation took place about two or three weeks after Armstrong moved there; that Decamp took back the possession from Armstrong, the tenant of Feay.
Now it might be said, that Decamp had a right to take it back, and keep it until his money was paid; but the proof is, he took it back declaring Feay should never have it, on any terms; he would spend every cent of it before Feay should have any benefit of it. After this, in August, 1816, Feay made a tender of the remaining 900 dollars, in bank notes, which has been decided by this court not sufficient to entitle him to enforce the contract. In December, 1816, Decamp told Feay he would cheat him, Feay, out of the money and the land too; it has been argued, that these words were spoken in jest, or were never spoken; but the demurrer admits the truth of them; the court must take that to be true which is sworn to and admitted: if not admitted, a jury might not believe it. Another witness proves the same declarations by Decamp at another time, a year after. It was also proved by Verner that since this suit was instituted, he was present when Decamp offered Feay 500 acres of land at French Greek; Feay said he did not want that land, it was his money he wanted: Decamp said he might see how he would get his money; he would give him that *230 land for the money he owed him. A declaration may be good evidence of a precedent debt; it is not pretended Decamp owed Feay any money, unless the contract in question was rescinded.
It seems Decamp thought he could refuse to comply with his contract; keep the land, and also keep the money he had received. That is not pretended now; the opinion delivered in this court, and reported 5 S. R. 323, has settled that point, and to it I refer. It is well settled, that in' many cases a purchaser may fail to obtain a decree for specific performance, and yet may support 'an action at law, Sugd. 183. And where the purchaser has paid part of the purchase money, and the seller does not complete the engagement, so that the contract is totally unexecuted, he, the purchaser, may affirm the agreement, by bringing an action for the non-performance of it, or he may elect to disaffirm the agreement ab initio, and bring an action for money had and received to his use. Sugd. 173, and cases there cited.
It has been objected, that because Feay insisted for some time on having the land, he cannot now consider the contract rescinded; that because he failed to pay at the time stipulated, he cannot recover the land, nor recover back the money paid; sueh is not the law; where the contract is not under seal, he may sue and declare in one count on the contract, to enforce the contract, and in another, to recover back the money paid, and this, though he failed to recover on the first count, by not offering to pay at the time. The ground on which the plaintiff failed in recovering on the special contract, was, that he did not call for the goods and pay for them within the time limited by the contract; and when he did call, and demanded, the defendants refused, because the demand was not made in season; the defendants then, by their own act, defeated the performance of the contract, and ought not to set it up as a pretext for holding the money advanced. 12 Johns. 274.
The conduct of the defendant can be viewed in no other light than a relinquishment of the contract; he refused to receive any more money from the plaintiff; he took back the possession of the premises which had been in possession of plaintiff: these acts are inconsistent with a claim to have the contract completed. Assumpsit lies to recover back money paid on a contract, which is put an end to, either when, by the terms of the contract it is left in the plaintiffs power to rescind it, or where the defendant assents to its being rescinded. 5 Johns. 85.
If one fail on his part, the other may consider the contract rescinded, and sue for money had and received, and recover what he has paid, or bring covenant and recover damages. 1 Caines’ Rep. 27.' 1 Pow. Con. 415. A tender is always for the benefit of the party to whom it is to be made, and may be waved or rendered unnecessary by him. An offer to comply with the contract on his own p^rt,is generally necessary to support a suit, but is not always; to support assumpsit to recover back what has been paid, where *231 •one party resumed possession which has been delivered, and declares at the time, that he does so because the contract is at an end, and that he is determined it shall be so, the other party may take him at his word, consider it at an end, .and recover back what he has paid. I would not be considered as saying, that every rash, inconsiderate declaration of one party, will enable the other to act on it a great length of time after; but solemn acts, repeated declarations, at long .intervals, of uniform tenor, will justify it.
Whatever then we might think, sitting as a jury, and weighing all the evidence, as well for, as against the defendant, and even on that, 1 should incline to decide against him; I have no doubt on this cause as it comes before us, where his own admission by demurring to the evidence, and the rules of law on that subject •compel us to take every fact sworn to against him to be true, and do not admit of our considering any testimony impugning the truth of the testimony against him.
The judgment of the Court of Common Pleas is reversed, and judgment for the plaintiff in error.
Upon a demurrer to evidence, the damages may be assessed by the principal jury, conditionally, before they are discharged; or which is the more usual way, may be assessed by another jury, upon a writ of inquiry, after the demurrer is determined. This must be done in the Common Pleas, to which this cause is remanded.