ALEXANDER S. PORTER, Plaintiff in error, who was Defendant below, *v.* JAMES J. McGINNIS, Defendant in error, who was Plaintiff below.

### IN ERROR.

The grantee of part of a tract of land previously claimed according to the lines of surrounding surveys, who subsequently occupied his part adversely according to the lines of his grant by cultivation without residence; allowed to hold the woodland, as well as the fields, by the statute of limitations.

ERROR to the Court of Common Pleas of Clarion county.

This was an action of *trespass quare clausum fregit*, brought by the defendant in error against the plaintiff in error, to recover damages for breaking and entering the close of the plaintiff, and cutting down, &c. certain timber trees, stated in the declaration. The defendant pleaded *not guilty*, and *liberum tenementum*.

The facts of the case, as stated in the charge of the court below (McCallmont, President) to the jury, and which are material to elucidate the points made on the argument and decided here, are these :

" James McGinnis commenced an improvement and settlement on a wild tract of land in 1807, which was supposed at the time, to be vacant, and defined his boundaries by what was called and known as the Franklin College Survey, No. 817, on the north, by the Jenkin, and the Ingersoll and Dallas surveys on the west and south, and by a line of a survey made by one Parker, and other warranted land, on the east. It appeared, that the controversy in this case grew out of a mistake made by the surveyor in locating the Franklin College warrant, No. 829, or rather in making out the draft by reversing one of the courses. The work on the ground could not be discovered, as it did not correspond with the survey as returned to the land office ; and not having been returned at the same time with the surveys on the other warrants, an opinion prevailed, that if located at all, it was at some other place ; and that the land between the survey made on the warrant No. 817 and the Jenkin warrants, was vacant. This vacancy, as it was then called, James McGinnis continued to improve, and kept part of his family residing upon it until 1815. Part of the land was cleared, and amongst other improvements was a sugar camp, which they occupied on the part now in dispute. James McGinnis, by virtue of his improvement and settlement, if the land belonged to the Commonwealth, had a right, on paying the purchase money, to a warrant for four hundred acres. But in 1815, he sold and conveyed one hundred and

nineteen acres thereof to his son James J. McGinnis for $50, and applied for a warrant for the residue, about three hundred acres.    James J. McGinnis entered upon the land so sold to him by his father, and held by the lines of his father's warrant on the one side, and by the line of an adjoining survey on the other.    He continued to occupy the land by these lines, either by himself or others under him, and to cultivate the cleared part thereof, till the period of the statute of limitations had elapsed.    It also appeared, that in 1840 the location of the college tract, No. 829, was discovered, and was found to include the land now in controversy, and the principal part of the land in the survey of James McGinnis under his warrant."

At the close of the evidence, a number of points were submitted by the counsel of each party, upon which the court was requested to instruct the jury.    The charge was excepted to by the defendant, and the answers of the court to the following points (the 6th and 7th) submitted by the counsel of the defendant, were assigned for error here.

6th point.    That a non-resident disseisor, who has been in the peaceable adverse and continuous occupancy by cultivation of land, must be limited in his claim to the land occupied for twenty-one years ; and that an entry by the owner upon a portion of the land not occupied by cultivation, does not amount to trespass.

In answer to this point, the court said, that they could not discover " any material difference between a resident and non-resident occupier of a tract of land for twenty-one years.    If a person enters under colour of title, claims and cultivates part of the land, pays taxes for the whole tract, and continues his cultivation and payment of taxes without inter-- mission for twenty-one years, why should he not have a title to the whole tract by the statute of limitations as certain as if he had resided during the said time on the land.    We, therefore, think, that if a person enter into the actual possession by cultivation of a tract of land adverse to the owner, or the person who has the legal title clears and cultivates part of the land, occupies the residue, and claims to the extent of the boundary of the tract, and continually exercises acts of ownership over it ; the right of the owner after twenty-one years would be barred, and his entry on a portion of the land not occupied by cultivation after the twenty-one years would be trespass.    To acquire and preserve a title by actual settlement, a personal residence on the land is necessary, because the law requires it.    But to acquire a title by the statute of limitations, residence is not necessary to make an adverse possession within the statute of limitations ; the possession may be adverse by enclosing and cultivating land.    Johnston v. Irwin, 3 Serg. & Rawle, 291."

7th. That if, therefore, plaintiff had produced evidence of his cultivation of a portion of the land in dispute for twenty-one years by himself, or others for or under him; the circumstance of his residing on other land from 1815 or 1816 till the present time, makes him a non-resident, and would entitle him (if to any thing) to the land actually enclosed and cultivated, and nothing more.

*Answer.*—"The residence or non-residence of the plaintiff would certainly make no difference, if other persons were cultivating it under or for him; whether there was residence or cultivation, or both, are facts for the jury. If there were cultivation and residence, the title could only be co-extensive with the land actually occupied and used, and the boundaries defined by the plaintiff and those under whom he claims, by cultivation or otherwise."

*Purviance,* for plaintiff in error.

To give effect to the statute, so as to bar the entry of the owner, there must be an actual, continued, visible, notorious, distinct, and hostile possession for twenty-one years. Hawk *v.* Senseman, 6 Serg. & Rawle, 21.

The designation of boundary by old James McGinnis, in 1807, (of which there was no evidence but that of his son William,) was afterwards, in 1819, abandoned. Did James J. McGinnis, under his deed of 1815, make any new designation of boundary, and was it necessary he should? His deed being indescriptive, containing neither quantity nor boundary, required a location. This, it is admitted, was not done by him until 1827, at which time he appropriates to himself the official survey of John Foster McGinnis. Give him the full benefit of this survey, and what does it amount to? Having been made but fifteen years before the suit was brought, it has no efficacy, as the statute could only run from the time the boundary was designated.

The case fails, then, for the want of designation of boundary, as required by Mr. Justice Rogers in the same case, reported in 6 Watts & Serg.

The quantum of claim must be defined in some way; if not by metes and bounds, at least by payment of taxes, or a registered valid deed, or direct notice to the owner. None of these modes having been resorted to, the legal owner could have no notice of a hostile possession beyond the occupancy.

The court below, therefore, erred in giving any validity to the deed of 1815, unaccompanied by any of the requisites referred to above.

If the law be settled that a non-resident disseisor can acquire title

to more than he actually occupies, it must still be subject, from neces-
sity, to his making a designation of boundary.

But, in the second place, can a non-resident disseisor acquire title
beyond his actual occupancy? The contrary is ruled in 3 Mass. Rep.
344; 3 N. H. Rep. 23 and 49; 7 Pickering, 381; Miller *v.* Shaw,
7 Serg. & Rawle, 129; Lenox *v.* Farley, 8 Serg. & Rawle, 392; Royer
*v.* Benlon, 10 Serg. & Rawle, 303.

*Gilmore* for defendant in error, cited 3 Watts, 72.

*Howe,* in reply.

The opinion of the court was delivered by GIBSON, C. J.

This case is so clear, that to decide it, requires little else than to
state it. In 1807, James McGinnis settled on wild land which turned
out to have been warranted and surveyed. He designated his boun-
daries by the lines of the surrounding surveys, and claimed all the
land that was included by them, insomuch that twenty-one years ad-
verse possession would give him title to the whole. In 1815, he sold
one hundred and nineteen acres to the plaintiff, his son, and at the
same time took out a warrant for the residue of the tract, having it so
laid as to set off the part sold. The plaintiff then held by the lines of
his father's warrant on the one side, and by the line of an adjoining
survey on the other. He continued to hold adversely by these lines
till the period of the statute of limitations had elapsed; and what is
there in the case to prevent him from holding the woodland by it as
well as the fields? He had acquired all that his father could convey;
and when the land was set off to him, by excluding it from the father's
survey, he held by definite boundaries. It is said he did not sit down
on it or make it the residence of a family; and it is urged that none
but a settler can have an adverse constructive possession. But in
what part of it does the statute speak of settlers? It was intended
not for settlers who enter by right, but for disseisors, who enter against
all right; and it was ruled in Eddy *v.* Faulkner, 3 Yeates, 580, that
no title can be acquired by settlement on patented or warranted land,
for the plain reason that none but the public lands are open to that sort
of appropriation. Such a settler is not an improver but a disseisor;
and his possession has no one incident of an improvement right. If
the statute protected the wood land of none but actual settlers, it would
not operate on wood land at all; for, as I have said, there can be no
title by improvement against a previous adverse right. But it is not
true, independent of the statute, that none but a resident can have a
constructive possession. It was settled in Mather *v.* Trinity Church,
3 Serg. & Rawle, 513, and indeed it had not been doubted, that the

owner of wild and uncultivated land is deemed to be in possession of it so as to maintain trespass for an injury to the soil, which is an action eminently founded on possession. How much stronger the case of one who claims all within his adopted lines, clears and cultivates à part of it, and uses the rest of it as others do their wood land? The direction was consonant to this principle, and we perceive no error in it.

Judgment affirmed.