## Lewis *against* Robinson.

An action for money had and received, will not lie, in the absence of proof of a contract, to recover the price of land which the defendant had possessed, occupied, claimed and sold as his own, although the plaintiff may have had a good title to it.

An action of assumpsit cannot be maintained for the purpose of determining conflicting titles to real estate; but if, in a personal action for breach of a contract relating to land, the question should arise incidentally, and the rights of the parties require it, it must be passed upon, although the action be personal.

WRIT of error to the district court of *Allegheny* county.

This was an action of *assumpsit*, for money had and received by Samuel Lewis for his use, in the name of John Braden against William Robinson. The defendant had laid out and divided a 9 acre out lot, situate in the town of Allegheny, No. 41, according to the general plan of said town, into a number of small lots, and sold them to different persons, at various prices, making in the aggregate a sum of about 25,000 dollars. The plaintiff claimed to recover the one-half of this sum, on the ground that he was the owner of an undivided moiety of the ground so sold. The claim of the plaintiff to the ground was never admitted by the defendant; on the contrary, the defendant uniformly claimed to be the exclusive owner of the whole of it until he sold. He derived his title by descent from his father, who died seised of the 9 acres, in 1814, after having been in the actual possession thereof, either by himself or his tenants, from about the year 1800. John Braden, the plaintiff, claimed to have derived his right also by descent from his father, William Braden, who died about 1790, leaving the plaintiff and two daughters as his only children, and heirs at law of his estate; one-half of which, according to the law of descents in this state at that time, descended to his son, and the remaining half to his two daughters. It did not appear from the evidence, that William Braden, the father, had ever taken possession of the lot, or that he ever had any title whatever to it. It appeared, however, after his death to have been assessed with taxes in the name of William Braden's heirs, from 1794 to 1799 inclusive. Witnesses were also adduced who testified, some that it was called "Braden's lot," others that it was called "the Braden lot;" and some again, that they heard James Robinson, the father of the defendant, call it "Braden's lot," and others, that they heard him say he was only an agent for Braden's heirs in taking care of the lot. It also appeared, that in 1794 he was appointed guardian for John and Margaret Braden, two of the heirs of William Braden. Witnesses

[Lewis v. Robinson.]

had known the lot for forty years or upward; knew it when it was woodland; that James Robinson had it cleared and fenced in 1800, by Samuel Croll, who testified to the fact, but never heard Robinson call it " Braden's lot." James Robinson after that, during the remainder of his life, cultivated and occupied it by his tenants, and used it as his own. On his death, his son, the defendant, took possession of it as part of his father's estate, and held and used it exclusively as his own property, from that time, which was in 1814, until he sold it, and then sold it as such. But it further appeared in evidence, that the commonwealth granted the lot to George Wallace, by patent, bearing date the 25th of March 1789; who was heard to say, in 1810, that shortly after he bought the lot of the commonwealth, William Braden expressed a wish to have a lot adjoining the river, that he then told Braden he might have this lot, and promised it to him, but he never paid him for it, but died afterwards; and that he had since that sold it to James Robinson, the father of the defendant, who had paid him either 500 or 600 dollars for it. George Wallace died in 1812, and it appeared that after his death, and also that of James Robinson, an amicable action was instituted in the common pleas of Allegheny county, between the repesentatives of George Wallace and the defendant, in which, among other things, the sale of this lot by George Wallace to James Robinson, and the consideration-money thereof was involved; and upon a reference of the same, by agreement of the parties, to James Ross, Henry Baldwin and William Wilkins, Esquires, it was awarded by them, that the defendant should pay to the representative of George Wallace 2000 dollars; and after having paid the same, the defendant obtained, under a decree of the court of common pleas of Allegheny county, a deed of conveyance for the lot from the representative of George Wallace, investing him with the legal title to it.

*Grier*, president, charged the jury, " that by the plaintiff's own showing, the defendant took possession of the land, held and occupied it as his own, received the rents as his own for twenty-five years, and sold it as his own. That he sustained no fiduciary character, as regarded the plaintiff; he was not his guardian, (for the plaintiff is a much older man than the defendant;) he acted neither as plaintiff's agent or trustee by any contract, express or implied, either in law or equity. And if such be the case, I am at a loss to conceive upon what principles of law or equity this action can be maintained. It is a well settled principle of law, that in actions of assumpsit, trover or replevin, or other transitory actions, the title to land cannot be tried. If I take possession of land by disseisin, and while in possession, claiming the land as my own, I cut and sell the timber, the owner cannot maintain assumpsit against me for the price of the trees, and thus try his title to the land in an action of assumpsit. And if I sell my title thus gained by disseisin, upon what known principle of law or equity I can be called a trustee for the owner of a better title, I have not yet discovered in any adjudged

case, ancient or modern. Have you any evidence that the defend-
ant, during the twenty-five years in which he has received the rents
of this property, and exercised exclusive possession and ownership
on it, has ever even dreamed that he was acting as guardian, agent
or trustee for a tenant in common, with the plaintiff or any body
else? That he had any idea he was selling any person's title but
his own? (whether good or bad is not material in this stage of the
inquiry.) If not, the plaintiff's claim to recover, in this action, is
without foundation, and your verdict should be for defendant."

The counsel for the plaintiff assigned the following errors.

1. That the court erred in its position, that William Robinson,
Jun., inheriting a vast and unincumbered estate from his father,
took the out lot, No. 41, freed and discharged from any trust which
attached to it in the hands of his father; and that it was indispensa-
ble to establish against him a distinct recognition and assumption
of his father's fiduciary character.

2. That the court erred in deciding, that an action for money
had and received, could not be maintained against William Robin-
son, Jun., when the land itself had, by his own act, passed into the
hands of innocent purchasers, and was thus placed beyond the
reach of ejectment.

3. That the court undertook to decide upon the character of the
possession taken and retained. This was the question at issue: it
was the province of the jury, on a view of all the facts and circum-
stances, to determine whether there had been an ouster and adverse
possession.

*Shaler* and *M'Candless*, for plaintiff in error, cited 7 *Watts* 387,
412, 472; *Select Ca. in Chan.* 62; 11 *Serg. & Rawle* 427; 2 *Sumn.*
520; 4 *Burr.* 1956; 2 *Dall.* 176; 3 *Watts* 277; *Cowp.* 376;
12 *Picker.* 120; 11 *Serg. & Rawle* 250; 6 *Cond. Ch. Rep.* 419; 1
*Leigh's N. P.* 46; 15 *Johns.* 159.

*Forward* and *Dunlop*, for defendant in error, cited 3 *Serg. &
Rawle* 509; 6 *Serg. & Rawle* 476; 2 *Rawle* 423; 2 *Watts* 126;
10 *Picker.* 160.

The opinion of the court was delivered by

KENNEDY, J.—The first error assigned has reference to that part
of the charge, in which his honour, the judge of the district court,
says, " he (meaning the defendant) sustained no fiduciary character
as regarded the plaintiff; he was not his guardian; he acted neither
as plaintiff's agent or trustee by any contract, express or implied,
either in law or equity." This is certainly all true, strictly so in
point of fact; at least it must be so considered, when not a syllable
of testimony appears to have been adduced tending to prove the
contrary; and more especially, when, as the learned judge says in
the preceding clause, " by the plaintiff's own showing, the defend-

[Lewis v. Robinson.]

ant took possession of the land, held and occupied it as *his own*, received the rents as *his own*, for twenty-five years, and sold it as *his own*." It is true, the defendant's father was the guardian of the plaintiff, who it seems attained full age in 1803 or 1804, ten years, at least, before the death of the defendant's father, in the course of which time, it might well be presumed that the guardian had rendered a satisfactory account of his guardianship to his ward; and that the latter, if he had any claim to the lot in question, would have asserted it.   Nothing of the kind, however, is even pretended until nearly twenty years afterwards.   But the evidence on the part of the defendant is, that the father not only cleared the lot in the first instance, in 1800, it being then woodland, but ever afterwards, as long as he lived, leased it out, occupied it by his tenants, had buildings and improvements put on it, and in short used it in every respect as his own.   These things were certainly different from, if not incompatible with what his duty as a guardian required; and not only so, but attended with an expense and charges which, as guardian, he could not have claimed any reimbursement on account thereof from his ward, and therefore not at all likely that they were made for the benefit of the latter.   And further, when in addition to all this, it does not appear that William Braden, the father of the plaintiff, ever, at any time during his life, claimed the lot or had the possession of it; but on the contrary, it being shown conclusively that George Wallace, in 1789, the year perhaps preceding the death of William Braden, purchased the lot from the commonwealth, and obtained a patent therefor from the same, investing him with the legal title to it for his own use, it would not seem that there was the least ground upon which a trust even in James Robinson, the father of the defendant, could be established or presumed to exist in favour of the plaintiff.   Neither could it have been fairly inferred therefrom, that the plaintiff had any interest in the lot in common with the father of the defendant, or indeed that the plaintiff ever had any real interest in it at all, of any kind whatever.   We, therefore, can perceive no error in what the court said to the jury on the subject of trust.

In regard to the second error, it may be observed, that it is impossible not to see that the action of assumpsit has been substituted here by the plaintiff for ejectment.   It is not the case of a personal action brought for the breach of a promise or contract, relative to land or real estate, in any shape or form that can possibly be imagined or given to it.   If it were so, and the title to such land had been brought in question, incidentally or collaterally, and in order to effectuate justice, it became necessary to inquire into and pass upon it, it would have to be done *ex necessitati rei*, notwithstanding the action is personal.   But when, as in this case, no contract or promise whatever is even pretended to have been ever made between the parties, for the breach of which this action is brought; but on the contrary, the plaintiff, in order to sustain his case, com-

[Lewis v. Robinson.]

menced in the very outset, by introducing evidence which possibly might be thought by some, as tending to show that he had some colour of claim to the land, instead of money as claimed in his declaration, though it would appear to be nothing more, at most, than the merest shadow of a claim, especially after it was proved beyond the possibility of a doubt, by the production of the patent itself from the commonwealth, that the legal title to the land was vested in a third person, upon whom the plaintiff did not even attempt to show that he had the least semblance of claim for it whatever. His great endeavour on the trial was to show that he had a right to the land, and not the money, under any obligation or contract entered into by the defendant for the payment of it, or performance of any thing else, for the non-performance of which money might be recovered as an equivalent or satisfaction. It is therefore literally a personal action brought to try the title to land, and instead of recovering the land itself, upon showing a good title to it, to recover from the defendant the value thereof in money, by showing what is not denied, that the defendant, after having been in the possession of it for twenty-five years, claiming it as his own, converted it to his own use, by selling it as his own absolute and exclusive property. It is, therefore, most palpably impossible to sustain the plaintiff's claim in this action, without subverting the rule laid down and recognised in the cases of Mather *v.* Trinity Church, 3 *Serg. & Rawle* 509; Baker *v.* Howell, 6 *Serg. & Rawle* 476; Brown *v.* Caldwell, 10 *Serg. & Rawle* 114; Irvaine *v.* Hanlin, 10 *Serg. & Rawle* 220; Snyder *v.* Vaux, 2 *Rawle* 423, and Powell *v.* Smith, 2 *Watts* 126. The rule of these cases shows clearly that the action of assumpsit is not the proper form of action, in which conflicting titles to land or the right of the inheritance can be tried. 6 *Serg. & Rawle* 481. The second error, therefore, has nothing in it, and cannot be supported.

Neither can we perceive any thing to complain of in the third error assigned. The court merely spoke of the possession which the defendant took and held of the lot, as it was shown to be by the evidence adduced by the plaintiff himself. In short, it was impossible to view it or to speak of it, as being other than adverse to all the rest of the world.

Judgment affirmed.