# NATIONAL TRANSIT CO. v. WESTON ET AL.

121 485
172 585

ERROR TO THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued April 30, 1888—Decided October 1, 1888.

121    485
e213   ²598
e213   ²599

1. A defendant in ejectment, who is in possession as a purchaser at a judicial sale of the land subject to the lien of a mortgage, is not estopped from defending his title against a purchaser at a subsequent judicial sale for the mortgage debt.
2. The true owner of land may not sustain trover for the value of oil, or other products of realty, produced and removed from the premises in the exercise of a colorable title, without fraud or force, by one in adverse possession.
3. The act of May 15, 1871, P. L. 268, authorizing replevin for chattels severed from realty, though the title be in dispute, is limited to that form of action, and the only other proper remedy remaining to the owner is ejectment, and proceedings for mesne profits.
4. Gill, the purchaser of an oil leasehold at judicial sale subject to a prior mortgage thereon to Weston, went into possession and produced and stored oil with a pipe-line company. Subsequently the leasehold was sold upon a judgment for the mortgage debt to Weston, who notified the company of his claim to the oil. Afterwards the company re-delivered the oil to Gill to whose credit it had been run. Weston then brought trover against the company for the value of the oil re-delivered to Gill, and the court entered judgment for the plaintiff, on the ground that Gill held under the title of the mortgagor who was estopped from denying the title he had vested in his mortgagee, wherefore Gill's possession was not adverse: *Held*, to be error, and that the action would not lie: King v. Richards, 6 Wh. 418, distinguished.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 107 July Term 1887, Sup. Ct.; court below, No. 42 March Term 1886, C. P.

On January 12, 1886, an action of trover and conversion was brought by W. W. Weston, Orin Weston and A. Weston, against The National Transit Co., to recover the value of 376.16 barrels crude petroleum oil which had been produced upon a leasehold held by J. D. Gill, delivered to the defendant company for transportation and storage, and re-delivered by the defendant company to said J. D. Gill. The defendant pleaded, not guilty.

At the trial on January 7, 1887, the plaintiffs' case in chief was closed, when a motion for a compulsory nonsuit was made; thereupon it was agreed by the parties that trial by jury should be dispensed with and the cause submitted to the decision of the court, under the provisions of the act of April 22, 1874, P. L. 109.

On March 19, 1887, the court, BROWN, P. J., filed a decision, which was as follows:

### FINDINGS OF FACT.

On October 18, 1882, H. B. Porter and others, being the owners of tract No. 527 in Mead township, Warren county, executed a lease for about twenty acres thereof to A. R. Curtis, for the purpose of prospecting for and operating in the production of oil. Curtis went into possession and sunk two wells, and on November 29, 1882, he gave the plaintiffs a mortgage on the leasehold to secure the payment of a bond of two thousand dollars, given to the plaintiffs at the same time, payable in instalments, the last of which became due September 1, 1883. After the recording of the plaintiffs' mortgage, under the provisions of an act of assembly relating to the lien of laborers, etc., on leasehold estates and the property thereon in Venango county: Act of April 8, 1868, P. L. 752, extended to Warren county: Act of March 18, 1869, P. L. 410, two liens were entered against the interest of Curtis for work, the first of which was done February 12, 1883. Under proceedings on these liens the interest of Curtis in the leasehold subject to the lien of plaintiffs' mortgage, was sold at sheriff's sale to J. D. Gill, on November 12, 1883. Gill went into possession

under his purchase, and claimed to hold the same as against the plaintiffs, the mortgagees of Curtis, and as against them as purchasers of the leasehold under proceedings on the bond as hereinafter stated. While in possession and thus claiming, Gill produced and took from the leasehold 376.16 barrels of oil.

The defendant was and is a common carrier, engaged in the business of transporting and storing oil, and as such received into its custody from said Gill the 376.16 barrels of oil between April 21, 1884, and March 14, 1885, and delivered the same to Gill at the times and in the amounts as follows, viz.: May 1, 1884, 82.97 barrels; November 26, 1884, 147.81 barrels; and March 19, 1885, 145.38 barrels. The price of oil on May 1, 1884, was $97\frac{3}{4}$ cents per barrel; on November 26, 1884, it was $72\frac{1}{2}$ cents per barrel, and on March 19, 1885, it was $82\frac{1}{2}$ cents per barrel.

After May 1, 1884, and before November 26th of that year, the plaintiffs, by writing bearing date May 15, 1884, notified the defendant of their claim to the oil and of their purpose to hold it responsible therefor. Before and on November 12, 1883, the date of Gill's purchase under the proceedings on the laborers' liens, the oil from the leasehold had by arrangement with Curtis and in consideration of his indebtedness to the plaintiffs, been run into the custody of defendant and credited on its books to W. W. Weston, one of the plaintiffs, and who was in fact their trustee, but the defendant had no notice of such trusteeship.

On December 17, 1883, under execution from judgment on the bond of Curtis to the plaintiffs, to secure which the mortgage mentioned was given, the leasehold was sold to the plaintiffs. On August 9, 1884, they brought their ejectment against Gill and afterwards obtained judgment, under which possession was delivered to them on December 2, 1885: [See Gill v. Weston, 110 Pa. 305.]

Mr. Gill, while in possession of the leasehold from which the oil in controversy was produced, expended in torpedoing and cleaning out the wells and in producing the said oil, the sum of $544.19, and there is no evidence that he acted otherwise than in good faith, or that he employed fraud or force or produced the oil in any other than the usual way.

Decision of Court below.

CONCLUSIONS OF LAW.

The motion for a compulsory nonsuit is overruled.

Trover lies by the owner of personal property against a bailee who delivers it to a wrongful bailor, after notice of the rights of the true owner. The defendant was a bailee of the oil for transportation and storage.

As incidental to the issue trying, the plaintiffs gave evidence of their title to the leasehold from which the oil was taken. While it is true that Gill was in possession claiming the title, during the time the oil was being produced, we think his possession was not such an actual adverse possession as will defeat the right of the plaintiffs to maintain this action, under the ruling in Mather v. Trinity Church, 3 S. & R. 509, and succeeding cases. Gill got the possession of the leasehold as the assignee, by operation of law, of Curtis the lessee. His rights can rise no higher than those of Curtis. His possession was after the lien of the plaintiffs' mortgage attached. He held in subservience to or rather under the title of Curtis, and Curtis held in subservience to the title of his mortgagees, the plaintiffs. Curtis is estopped from denying a title he created, and Gill, claiming under Curtis, is also estopped. One who is estopped is in the same position as one who does not contest the title.

We are not aware of any principle of law or justice that entitles the defendant to recoup the expenditures of Gill against the damages claimed for the conversion of the oil. The damages sustained by the plaintiffs, as of the day of filing this decision, including interest by way of damages from the times the same was delivered by the defendant to Gill, is $350.59.

The legal propositions presented by counsel are answered as follows :

Plaintiffs' points :

1. That the action of trover lies for the recovery of the value of personal property, against a bailee and in favor of the owner of such personal property, where such bailee, after notice of the rights of such owner and demand for the delivery of the same to him, delivers such personal property to another, even if such other be the original bailor to him of the property.

Answer: Affirmed.[5]

2. That evidence of the title to the real estate from which fixtures or other property constituting part thereof have been unlawfully severed and converted, may be given for the purpose of proving title to the property so severed and converted, in an action by the owner of such real estate to recover the value of such property so converted, against a vendee or bailee of the person unlawfully severing and removing same: that in an action for such property or the value thereof, against a bailee with notice of the owner's rights and demand made, such evidence is merely incidental to the issue, and may be given, as any other evidence may, serving to establish the ownership of the property involved in the action.

Answer: Affirmed.[6]

3. That neither the owner of the real estate, holding over after sale of the same on execution, nor any one in possession under him, has such hostile and adverse possession as against the purchaser at such sale, as would bar a personal action against either of them by such purchaser, to recover the value of a fixture or other constituent part of the real estate sold, severed and removed by the owner or other person while so holding over: that they are estopped by the judgment and execution from denying the title of the purchaser thereunder, and hence their possession is not to be deemed in law as hostile and adverse to such title, but in subservience to it.

Answer: Affirmed.[7]

4. That since the passage of the act of assembly of May 15, 1871, P. L. 268, relating to actions of replevin, it is and has been lawful for a party to recover in an action of trover the value of property severed from realty, notwithstanding the fact that the title to such realty may be in dispute, provided such party shows title in himself at the time of such severance.

Answer: Refused.

5. That the measure of damages, in an action by the owner of personal property, in trover against the bailee, who delivers the same to another after notice of title and demand made, is the value of the property at the time of such delivery.

Answer: Affirmed.[8]

6. That under the undisputed evidence in this case, the finding of the court should be in favor of the plaintiffs for the

value of the oil delivered by defendant to J. D. Gill, at the time of such delivery, with interest from the respective dates of delivery.

Answer: Affirmed.[9]

Defendant's points:

1. That the oil in dispute being a product severed from land by a person in possession under adverse claim of title, who delivered it to the defendant, a common carrier for transportation, and who received it again from the defendant before plaintiffs had recovered possession of the land, this action of trover cannot be maintained.

Answer: Refused.[10]

2. That J. D. Gill having produced the oil in controversy while in actual adverse possession of the land from which it was produced, under a bona fide claim of title, and not having been guilty of any fraud, force or malice, was only liable for the value of the oil in place, and the defendant having received the oil from him is not subject to any greater liability.

Answer: Refused.[11]

And now, March 19, 1887, if exceptions to the findings of fact or the conclusions of law herein be not filed within thirty days of service of notice of this decision to the parties or their attorneys, the prothonotary will enter judgment in favor of plaintiffs against the defendant for the sum of $350.59 with costs.

On May 3, 1887, exceptions filed to the decision by the defendant were overruled, but the findings of fact were modified by additional findings : (1) That there was no agreement or statement, when the leasehold was sold to Gill, to the effect that the sale was made subject to the lien of plaintiffs' mortgage ; and (2), that A. R. Curtis was in possession of the leasehold from which the oil in controversy was produced, before and at the time of the sheriff's sale to Gill, and there was no evidence that Gill had knowledge at the time of the sale that the oil from said leasehold was run to the credit of any other person than Curtis, and (3) that the mortgage to the plaintiffs was a leasehold mortgage under the provisions of the act of April 27, 1855, P. L. 369. Judgment having been entered in favor of the plaintiffs, for $350.59, in accordance with the foregoing

order, the defendant took this writ, specifying that the court erred, in finding:

1. That the possession of J. D. Gill of the leasehold from which the oil in controversy was produced, was not such an actual adverse possession as would defeat the plaintiffs' right to maintain this action.

2. That J. D. Gill's right under the sale upon the mechanics' liens could rise no higher than those of Curtis, and in finding that Gill held in subservience to the title of Curtis.

3. That J. D. Gill was estopped from contesting adversely the title and right to possession of the plaintiffs.

4. That the defendant cannot recoup the expenditures of Gill against the damages claimed by the plaintiffs in this case.

5–9. In the affirmance of plaintiffs' points.[5 to 9]

10, 11. In the refusal of defendant's points.[10 11]

*Mr. H. McSweeney* (with him *Mr. R. Brown* and *Mr. Charles W. Stone*), for the plaintiff in error:

1. Trover for oil, produced from a leasehold, cannot be maintained by the true owner, out of possession, against one who has actual adverse possession and sets up title to it.

(*a*) That the owner of land, while out of possession, cannot maintain trover or other transitory action for personal property which has become such by severance from the freehold, against one who is in actual adverse possession of the lands under claim of title, is a doctrine too well established as part of the law of Pennsylvania to need argument: Mather v. Trinity Church, 3 S. & R. 509; Brown v. Caldwell, 10 S. & R. 114; Powell v. Smith, 2 W. 126; Lehman v. Kellerman, 65 Pa. 489; McNaught v. Swing, 1 Chest. Co. R. 467.

(*b*) For articles severed from the freehold by an adverse claimant in possession, the proper remedy for the true owner, is ejectment and proceedings for mesne profits. The law as declared in the cases cited, is so far modified by the act of May 5, 1871, P. L. 268, that replevin may now be sustained by the true owner, but the act does not extend to any other form of action than replevin.

2. The possession of J. D. Gill, while the oil in controversy was being produced, was such an adverse possession as would prevent the plaintiffs from maintaining trover against him and those claiming under him.

(*a*) Gill's possession had a lawful commencement, by his purchase at sheriff's sale. The sale under which the plaintiffs claimed did not take place for a month afterwards, and that Gill's possession was retained in perfect good faith, in the belief that his title was better than the plaintiffs', is evidenced not only by the findings of the court, but by the whole course of his acts and conduct during that period. Adverse possession is the enjoyment of land, or such an estate as lies in grant, under circumstances indicating that such enjoyment has commenced and continued under an assertion or color of right on the part of the possessor: Bouvier, L. D., title Adverse Possession; color of title is anything in writing purporting to convey title to land, and it is immaterial how imperfect the writing may be: Veal v. Robinson, 70 Ga. 809; Hamilton v. Wright, 30 Ia. 486; Brooks v. Bruyn, 35 Ill. 394; Field v. Boynton, 33 Ga. 239; Hawk v. Senseman, 6 S. & R. 21; Harlan v. Harlan, 15 Pa. 515; Lehman v. Kellerman, 65 Pa. 492; Martin v. Jackson, 27 Pa. 511.

3. No rule of estoppel applies in this case, and Gill, without surrendering his possession, might legally set up any defects in the plaintiffs' title acquired under the mortgage sale.

(*a*) Estoppel is a doctrine that concludes the truth in order to prevent fraud or falsehood, and imposes silence on the part of the owner, when in conscience and honesty he should not be allowed to speak: Bouvier, L. D., title Estoppel; Van Rensalaer v. Kearney, 11 How. 326. There was no fraud or falsehood in Gill's possession. The trial in the ejectment case (see Gill v. Weston, 110 Pa. 305), was upon the merits, and the plaintiffs recovered upon a superior title, and not on the ground of estoppel. Gill was not precluded from showing that the mortgage from Curtis was not properly executed, or not properly recorded, or that its lien was discharged by reason of the prior sale on the mechanics' liens: Calder v. Chapman, 52 Pa. 359, Uhler v. Hutchinson, 23 Pa. 110; Jacques v. Weeks, 7 W. 261.

(*b*) A sale under a void judgment or mortgage conveys no title, and an unrecorded mortgage is no higher than a specialty: Nice's App., 54 Pa. 200; Wilson v. Shoenberger, 34 Pa. 121. The true doctrine of estoppel, as applied to a purchaser at sheriff's sale, is this: Such a purchaser, as against a purchaser

at a sale under a prior judgment or mortgage, will not be permitted to set up an outstanding title acquired from a third party: Young v. Algeo, 3 W. 223; but he is not estopped from setting up anything that will defeat the title of the purchaser under the sale on such a mortgage or judgment: Gill v. Weston, 110 Pa. 305.

4. While Gill remained in possession of the leasehold, he could legally produce oil therefrom, and sell it, and convey a good title, until stopped by an ejectment and estrepement under the act of June 5, 1883, P. L. 79, or by replevin under the act of May 5, 1871, P. L. 268.

(*a*) The mortgagor of real estate may cut and sell timber, etc., growing, and where so sold without fraud or concealment, the vendee takes a good title: Angier v. Agnew, 98 Pa. 587; Hoskin v. Woodward, 45 Pa. 42; Witmer's App., 45 Pa. 463. But a purchaser of fixtures from the mortgagor is affected with knowledge of an existing lien, and the sale is a fraud upon the mortgage creditor and void: Gill v. Weston, 110 Pa. 312; Hoskin v. Woodward, supra; Witmer's App., supra. The cases distinguish between products of land and articles severed from land in the course of business, and fixtures, the removal of which is a dismantling of the inheritance.

5. Gill had the right to offset the cost of production against the market value of the oil in controversy.

(*a*) In the absence of fraud or malice, the measure of damages in an action of trover for articles severed from the freehold, is the value of the articles in place: Herdic v. Young, 55 Pa. 176; Morrison v. Robinson, 31 Pa. 456; Forsyth v. Wells, 41 Pa. 291; Walker v. Humbert, 55 Pa. 407; Kille v. Ege, 82 Pa. 102; Lykens V. Coal Co. v. Dock, 62 Pa. 239.

6. No recovery can be had against The National Transit Company, the defendant in this case, as the company received the oil in controversy from J. D. Gill, in good faith for transportation as a common carrier, and returned it again to Gill while still in apparent adverse possession of the leasehold from which it was produced.

*Mr. Charles Dinsmoor* (with him *Mr. James Cable*), for the defendants in error:

1. Curtis, whose incumbered title Gill purchased at the sale

upon the mechanics' liens, was certainly, after the sale upon the paramount lien with which he had invested the plaintiffs, estopped by his own acts from denying the validity of or defending against the title and right of possession he had thus created, and for which he had received the sum of $2,000 secured by the mortgage: Adam v. Mengel, 7 Cent. R. 184. But if Curtis is estopped, Gill, whose relation of privity to him is unquestionable, is also estopped.

2. Moreover, after the incumbered estate he purchased had been extinguished by the sale to the plaintiffs on their writ, Gill had no color of title on which to ground his wrongful possession or to justify the waste he committed. Holding over, he was merely a wrong-doer. Being liable by statute to answer in damages to the purchaser "for the unjust detention of the premises," he was not in position to assert either color or claim of title: Harlan v. Harlan, 15 Pa. 507.

3. The conversion of which we complain occurred when the defendant re-delivered the oil in suit to Gill, after notice of the plaintiffs' rights and demand. At that moment the rights and liabilities of the parties became fixed. Even an innocent purchaser could not recoup the expense of changing property from one form to another by his wrongful vendor: Wooden Ware Co. v. United States, 106 U. S. 432; Baker v. Wheeler, 8 Wend. 505; Foster v. Weaver, 118 Pa. 42.

4. In support of the contention that no recovery can be had against The National Transit Company, the defendant in this action, no authorities are cited. If the point is pressed it is sufficient to refer to King v. Richards, 6 Wh. 418.

OPINION, MR. JUSTICE GREEN:

We think the learned court below was in error in applying the doctrine of estoppel to the claim of the defendant. The oil in controversy had been received by the defendant as a common carrier, for purposes of transportation, from Gill, who had produced it in the regular course of his business as an oil producer. He was in possession of the land from which the oil was obtained under a sheriff's deed made in pursuance of a judicial sale upon a judgment sur mechanics' lien against the former owner. We discover nothing in this record to indicate any fraud or force in the possession of Gill, and he certainly

had a right to defend his title by any means which tended to defeat the claim of the plaintiffs, who were also purchasers at a subsequent judicial sale.

Certainly, there were no relations between Gill and these plaintiffs which made room for the doctrine of estoppel to be applied to close Gill's mouth and tie his hands as against them. They were strangers, and adverse claimants to the same property, under different and conflicting sheriff's sales. Gill had asserted nothing, and done nothing, to mislead the plaintiffs in any way. If Curtis, the former owner, as whose property the land was sold, had given a mortgage which was subject to any kind of defect, and the property was exposed to sale by the sheriff under a valid judgment, certainly any stranger could buy it and take advantage of such defect, whether Curtis could do so or not. In Uhler v. Hutchinson, 23 Pa. 110, we held that the holder of an unrecorded mortgage, or of a mortgage illegally recorded, by giving notice of its existence at a sheriff's sale upon a judgment, cannot bind the estate mortgaged in the hands of a purchaser at such sale where the judgment creditor had no notice of the mortgage when his judgment was entered. While the mortgage would have been perfectly good against the mortgagor, that consideration did not impair the title of the purchaser or clog it with any estoppel to which the mortgagor might be subject. The case of Calder v. Chapman, 52 Pa. 359, is another emphatic illustration of the same doctrine.

There being no estoppel in the defendant's way, the only remaining question is whether trover would lie to recover the value of the oil removed from the premises by Gill during the period of his possession. He was certainly in the actual, adverse, hostile possession of the land, claiming by color of title, and removed the oil in the exercise of his colorable title. The oil was a part of the profits of the land, as much so as growing crops. It was in no sense a fixture or distinctive part of the improvements upon the land. Prior to the act of May 15, 1871, P. L. 268, neither replevin nor trover would lie for the recovery of articles severed from the freehold by an adverse claimant in possession, the proper remedy being ejectment, and for mesne profits: Mather v. Trinity Church, 3 S. & R. 509; Powell v. Smith, 2 W. 126; Lehman v. Kellerman, 65 Pa. 489. By the terms of that act, it is provided, " that in all actions of

replevin now pending or hereafter brought to recover timber, lumber, coal or other property severed from realty, the plaintiff shall be entitled to recover, notwithstanding the fact that the title to the land from which said property was severed may be in dispute." As the language of the act is limited to the action of replevin, it does not embrace any other form of action, and hence is inapplicable to actions of trover. The case of King v. Richards, 6 Wh. 418, has no application to the facts of this case. There the bailee delivered the goods to the true owner and was sued by the bailor, and it was held that the delivery to the true owner was a good defence. But the goods in question were not profits of land severed from the freehold by one in adverse possession, and no such question could, or did, arise as the one developed on this record.

Judgment reversed.