Samuel Giffin *v.* South West Pennsylvania Pipe Lines,
Appellant.

[Marked to be reported.]

*Actions—Trover and conversion—Chattels severed from freehold—Adverse possession.*

Trover and conversion is not the proper remedy to recover the value of chattels severed from the soil, while the soil itself at the moment of severance was in the adverse possession of another.

*Action—Assumpsit—Oil—Adverse possession—Pipe lines.*

A part owner of oil land cannot maintain an action of assumpsit against a pipe line company to recover the value of oil delivered to the company by a person in possession of the land and holding adversely to the plaintiff.

*Pipe line companies—Common carriers—Agents.*

A pipe line company is a common carrier bound to receive and transport, for all persons alike, all goods intrusted to its care, and is not in any sense to be deemed an agent for the persons committing oil to its care, with power either to affect by its acts or declarations, the rights of customers, or to conserve the litigated claims or rights of customers as between them and other persons.

Where a pipe line company receives oil from land in the possession of the consignor, it is bound to deliver the oil to the consignor, although the oil is claimed by another person who was formerly in possession of the land and had delivered oil from the land to the pipe line company.

Argued Oct. 28, 1895. Appeal, No. 30, Oct. T., 1895, by defendant, from judgment of C. P. No. 3, Allegheny County, Aug. T., 1892, No. 306, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit to recover the value of oil claimed by plaintiff. Before McCLUNG, J.

At the trial it appeared that the defendant is a corporation engaged in the business of transporting and storing oil for the public by means of pipe lines and tanks. In the course of its business it received for transportation and storage from a certain piece of land at McDonald, in Washington county, known as the Juvenal Deschamps lot, during the months of April and May, 1892, certain quantities of oil, amounting in the aggregate to over 4000 barrels, being oil which had been produced from said premises through an oil well drilled thereon.

GIFFIN v. PIPE LINES, Appellant.

581

1896.]
Statement of Facts—Arguments.

The plaintiff claimed that a part of this oil, that is, 234.87 barrels, belonged to him, and demanded it from defendant. The defendant, however, had been notified by P. C. Friend, receiver of the Liberty Oil Company, Limited, that this oil belonged to the Liberty Oil Company, Limited, and said receiver had demanded the delivery thereof to himself. Upon receipt of this notice and demand, the defendant placed this oil in its disputed oil account, in order that it might be held until an investigation could be made, and the defendant could ascertain to whom delivery should be made. Upon investigating the matter, the defendant was satisfied that at the time the oil was produced and received by the defendant, the premises were in the possession of the receiver and refused to deliver to plaintiff, and did deliver to the receiver.

The evidence relating to the possession of the land is quoted at length in the opinion of the Supreme Court.

Defendant's points were as follows :

1. That under all the evidence, the verdict must be for the defendant. *Answer :* This is refused. [1]

2. If the court refuse to charge as above requested, then it is respectfully requested to charge : That if the jury find from the evidence that P. C. Friend, receiver, was in the actual possession of the interest in the leasehold premises from which the oil in question was produced, under claim of title during the time said oil was produced, and so notified the defendant, the verdict must be for the defendant. *Answer :* This is affirmed. You will recollect, in connection with that affirmance, the evidence to rebut that claim of exclusive possession which I have suggested to you in the fact that it is alleged that this pipe line, still acting as the agent of the plaintiff, was to a certain extent already in possession, or was in possession for the purpose of carrying off this oil. [2]

Verdict and judgment for plaintiff for $149.18. Defendant appealed.

*Errors assigned,* among others, were (1, 2) above instructions, quoting them.

*A. Leo. Weil, Henry A. Miller* and *C. M. Thorp* with him, for appellant.—The defendant was bound to deliver the oil,

which was the subject-matter of this suit, to the person who was in possession of the land from which it was produced at the time of its production : Nat. Transit Co. v. Weston, 121 Pa. 485 ; Mather v. Trinity Church, 3 S. & R. 508 ; Baker v. Howell, 6 S. & R. 475 ; Brown v. Caldwell, 10 S. & R. 114 ; Lewis v. Robinson, 10 Watts, 338 ; Lehman v. Kellerman, 65 Pa. 489.

That the plaintiff was not in possession and that Mr. Friend, the receiver of said Liberty Oil Company, Limited, the person to whom defendant delivered the oil, was in adverse and exclusive possession, clearly appears from the testimony.

*N. W. Shafer, J. B. Chapman* with him, for appellee.

OPINION BY MR. JUSTICE GREEN, January 6, 1896 :

There is no doubt whatever that P. C. Friend as receiver of the Liberty Oil Company, Limited, did in point of fact assume to take possession of the well in question from and after January 16, 1892, and conducted the operations at the well, employing and paying the men from the time of his appointment as receiver. The testimony as to his actually taking possession of the well is so positive, and proved by so many witnesses, and really disproved by none, that it must be assumed as an established fact. T. D. Casey, one of the owners, testified as follows on this subject: Q. You were a member of the Liberty Oil Company, Limited, were you ? A. Yes, sir. Q. I believe you were president of the Liberty Oil Company. A. Yes, sir. Q. State who was in possession of this well on the Juvenal Deschamps lot, McDonald borough, Washington county, in which Mr. Giffin claims this interest, in December, 1891, and January, 1892 ? A. The Liberty Oil Company, Limited. Q. Who delivered possession of it to Mr. Friend, receiver of the Liberty Oil Company, Limited? A. The Liberty Oil Company, Limited, delivered him possession. Q. State, if you know, whether Samuel Giffin at any time had possession of this property ? A. Not that I know of. Q. What interest did the Liberty Oil Company, Limited, own in this well ? A. They owned all but one eighth. . . . Q. Who had possession of the other eighth ? A. Well, C. S. Vezie, I believe. Q. Who drilled this well on the Descamps lot ? A. Charles S. Vezie. Q. For whom ?

A. For the Liberty Oil Company, Limited. Q. Who built the oil rig over this well; who had it built? A. The Liberty Oil Company, Limited. Q. Who paid for the materials—boilers, engine, casing and tubing—that went into the well? A. The Liberty Oil Company, Limited. Q. Who paid the expenses of operating the well up till the time it was delivered to P. C. Friend, receiver? A. The Liberty Oil Company, Limited.

Mr. Friend the receiver testified that he was the receiver of the Liberty Oil Company, Limited, and was asked: Q. State who was in possession of this well on the Descamps lot, Washington county, McDonald borough, in April and May, 1892? A. I had possession of it at that time as receiver. Q. How long had you had possession of it? A. From my appointment in the early part of January, 1892. Q. Until when? A. Until I sold and disposed of the property in 1893. Q. During this time was any one else in possession of this property? A. No, sir. Q. Who employed the men who were at work upon the property? A. I did. Q. Who paid them? A. I did. Q. State if you notified the pipe line as to any claim to oil from this well? A. I did; yes, sir. Q. State what notice you gave them? A. I notified them that the property had come into my hands through the court as receiver. . . . Q. Who put you in possession of this property? A. I took possession of that property under my appointment as receiver. Q. But who delivered the possession to you? A. Why Mr. Casey, and Mr. Wallace and Mr. Sturgeon and Mr. Vezie at that time. Q. You mean the Liberty Oil Company, Limited? A. The Liberty Oil Company, Limited. Q. They constituted at that time the board of managers of the Liberty Oil Company, Limited, did they? A. Yes, sir. Q. You mean Mr. Casey, Mr. Sturgeon and Mr. Wallace? A. Yes, sir. Q. During the time you were in possession of this property as receiver, state if Mr. Giffin had possession of the property, to your knowledge, in any manner? A. Why, no sir, he did not.

C. S. Vezie was asked: Q. You were in possession of this property in January and February, 1892? A. Yes, sir. Q. For whom did you hold possession; for whom were you working? A. I was working for the Liberty Oil Company. Q. I say in January, 1892, for whom were you working? A. For P. C. Friend. Q. And in February? A. Yes, sir. Q. You

were superintending for him at that time? A. Yes, sir. Cross-examined. Q. Well were you in possession of the property before Mr. Friend took possession? A. Yes, sir. Q. For whom were you working then? A. Well I had an interest there, and I was working for myself and all the rest of them. Q. Who were the rest of them? A. Mr. Casey, Mr. Wallace, Mr. Sturgeon and Mr. Welsh and myself. Q. Then at the time the receiver took possession you were in possession for these parties and for yourself? A. Yes, sir. Q. Were you in possession for them as the Liberty Oil Company, Limited, or individually. A. Why it was called the Liberty Oil Company.

The assertion made in the appellee's counter statement that there were two separate companies, one called Liberty Oil Company and the other called Liberty Oil Company, Limited, and that the well in question was a different well from the one claimed by the Liberty Oil Company, Limited, is entirely unsupported by any testimony and is manifestly incorrect. The whole of the testimony shows beyond all question that there was but one well about which there was controversy, and that is the very well which was actually taken possession of by Mr. Friend as receiver of the Liberty Oil Company, Limited. It was the oil from that well that was in dispute, and of that well the plaintiff did not have possession in any sense at any time after the receiver took possession. The plaintiff was examined in his own behalf and he states nothing in contravention of this. He does not pretend to say that he had any kind of possession of the well or that he had anything to do with running it. He said he had bought on December 9, 1891, a part of the interest of A. A. Welsh in the well, which gave him a sixteenth interest. The other interests were owned by the other persons named in the testimony, all of whom who testified, including the president, said that the company was the Liberty Oil Company, Limited, and that the possession was delivered to the receiver in January, 1892. Nor does the testimony of the plaintiff's witness A. A. Welsh at all affect the situation. He says he was in possession up to December 22 or 23, when he left and did not return. He says he left Vezie in possession about December 24. But he makes no pretense of saying that the well in controversy was not the well of which the receiver took possession, or that there was any other well than this particular one whose oil product was in dispute

This being the state of the testimony we think the case comes within the line of decisions of which the National Transit Co. v. Weston, 121 Pa. 485, is a pertinent illustration, in which it was held that neither trover nor replevin would lie to recover the value of oil removed from the premises by one who was in the adverse possession of the land, during the time of his possession, except in so far as the act of May 15, 1871, P. L. 268, gave a special remedy by replevin.

In Mather v. Trinity Church, 3 S. & R. 509, TILGHMAN, J., said, " I understand the substance of the charge to be, that although the jury should be of opinion that the defendant had the exclusive and adverse possesssion of the land from which the stones were taken, for any time less than twenty-one years, yet the plaintiff might recover in this action of trover. This is not the proper form of action in which to try the title of land, nor have I been able to find any case where it has been sustained for that purpose. . . . Neither do I find any case where trover has been supported when the possession of the land was held adversely to the plaintiff. . . . That the law draws possession to the property, of personal chattels unconnected with the land, may be true, and yet it does not follow that the possession is drawn in like manner to the property of that kind of chattel which was part of the soil until severed from it, when the soil itself at the moment of severance, was held by another. I should rather suppose that in such case he who had possession of the land had possession also of the stones dug from it, and against him another who had the right to the possession of the land could not support trover. He certainly could not support trespass. But he would not be without remedy, for he might first recover the possession by ejectment, and then recover the mesne profits in an action of trespass." In Baker v. Howell, 6 S. & R. 476, the action was assumpsit for money had and received. The defendant had taken certain sand from certain premises and sold it. The plaintiff claimed title to the premises from which the same was taken, and the action was brought to recover the proceeds of the sale of the sand. It was held that an action of assumpsit would not lie, as it involved conflicting titles to land. There are many other cases to the same effect: Brown v. Caldwell, 10 S. & R. 114 ; Lewis v. Robinson, 10 Watts, 338 ; Lehman v. Kellerman, 65 Pa. 489.

The learned court below conceded the correctness of the foregoing proposition, and as there was no real conflict as to the actual possession of the well we think the first point of the defendant should have been affirmed. But the court adopted a theory that the defendant was still the agent of the plaintiff for the purpose of carrying the oil to its lines or tanks, and therefore the possession of the receiver was not the exclusive possession of the well. We are unable to agree to this theory, (1) because we cannot discover any evidence of the fact that the defendant had any pipe line upon the premises for the purpose of carrying the oil from the wells to its own lines, (2) because if the fact were so, we cannot regard the defendant as anything more than a common carrier, bound to receive and transport for all persons alike all goods intrusted to its care. Such carriers are not in any sense to be deemed as agents for the persons committing goods to their care, and with power either to affect their rights by acts or declarations or to conserve the litigated claims or rights of their customers as between them and other persons. When the defendant received notice of the change of possession of the well from the receiver, they were obliged to consider their own position and liability in the premises, and if they were then receiving the oil which they originally received from the plaintiff, but now received from another person clothed with legal control over the oil, by reason of ownership changed by act of the law, they were not at liberty to disregard the notice. No theory of a prior agency and consequent liability to the original consignor, would suffice to relieve them of their liability to the present consignor. The question therefore recurs who was in possession of the oil as it was then being delivered to the defendant, and that is an independent question to be decided upon its own merits. As we regard the merits of that question they are all with the defendant, and the court should have delivered a binding instruction to the jury to find for the defendant. The assignments of error are all sustained.

Judgment reversed.