[S. F. No. 21743.   In Bank.   Jan. 21, 1965.]

THE RIVER LINES, INC., et al., Petitioners, v. PUBLIC UTILITIES COMMISSION, Respondent; SOUTHERN PACIFIC PIPE LINES, INC., et al., Real Parties in Interest.

William W. Schwarzer, McCutchen, Doyle, Brown, Traut-
man & Enersen, Philip C. Wilkins, Wilkins, Little & Mix,
Frank Loughran, Berol, Loughran & Geernaert, Noel J. Dyer,

Robert M. Westberg and Pillsbury, Madison & Sutro for Petitioners.

Richard E. Tuttle, Mary Moran Pajalich and Lawrence Q. Garcia for Respondent.

Charles W. Burkett, Herbert A. Waterman and John MacDonald Smith for Real Parties in Interest.

MOSK, J.—Three Northern California barge lines engaged in hauling petroleum and other commodities commenced these proceedings before the Public Utilities Commission against the Southern Pacific Company (hereinafter referred to as Southern Pacific) and its wholly-owned subsidiary, Southern Pacific Pipe Lines, Inc. (hereinafter referred to as Pipe Lines). The barge lines claimed that Pipe Lines was charging unreasonably low rates for transporting petroleum products from San Francisco Bay Area refining points to Stockton, Sacramento, and Chico.

The commission found that the rates charged by Pipe Lines were not unreasonable and denied the barge lines any relief. By petition for writ of review, the barge lines claim that the commission erred in determining that section 727 of the Public Utilities Code[1] had no application to the instant proceedings[2] and that the commission abused its discretion in failing to establish minimum rates under section 726.

Section 726 provides: ". . . In any rate proceeding where more than one type or class of *carrier, as defined in this part* [§§ *201-2113, known as the Public Utilities Act*], *or in the Highway Carriers' Act* [§§ *3501-3812*], is involved, the commission shall consider all such types or classes of carriers, and, pursuant to the provisions of this part or the Highway Carriers' Act, *fix as minimum rates* applicable to all such types or classes of carriers *the lowest of the lawful rates so determined for any such type or class of carrier. This provision does not prevent the commission from granting to carriers*

---

[1]All section references herein are to the Public Utilities Code.

[2]The commissioners were unable to agree as to the reason for the inapplicability of section 727. Two commissioners concluded that section 727 was inapplicable because Pipe Lines was not a "competing land carrier" within the meaning of the section, and two other commissioners reasoned that the section is applicable only to proceedings to establish "rates for water carriers" and that no such proceeding was involved. Each opinion reserved the question considered crucial by the other. The fifth member of the commission concluded in a dissenting opinion that section 727 was applicable and that the commission should determine whether the barge lines were entitled to relief under that section.

*by water such differentials in rates as are permitted under other provisions of law.*" (Italics added.)

Section 727 states: "It is the policy of the State that the use of all waterways, ports, and harbors of this State shall be encouraged, and to that end *the commission is directed in the establishment of rates for water carriers* applying to business moving between points within this State *to fix those rates at such a differential under the rates of competing land carriers* that the water carriers shall be able fairly to compete for such business. In fixing the rates there shall be taken into consideration quality and regularity of service and class and speed of vessels. *'Competing land carriers' includes all land carriers as defined in this part, and includes a highway contract carrier and a radial highway common carrier as defined in the Highway Carriers' Act.*" (Italics added.)

█ Notwithstanding the assumption in sections 726 and 727 that the Public Utilities Act or the Highway Carriers' Act contains definitions for the terms "carriers" and "land carriers," definitions are not found in either of the acts. That omission, however, does not require us to ignore the terms. Unless effect is given to them, section 726, which relates solely to "carriers," would be rendered totally inoperative, an intent we cannot reasonably attribute to the Legislature. Accordingly, the term "carriers" as used in section 726 should be interpreted in accordance with applicable principles of statutory construction. █ It is obvious that the provisions of section 727 are directly related to those of section 726, and the term "carriers" should be given the same meaning in both sections.

█ A pipeline carrying petroleum products comes within the ordinary concept of a carrier. (See Webster's New Internat. Dict. (3rd ed. 1961) p. 343; Black's Law Dict. (4th ed. 1951) p. 269; *Schmitt* v. *War Emergency Pipelines* (1949) 175 F.2d 335, 336; *State Tax Com.* v. *Petroleum Exploration* (1934) 253 Ky. 119 [68 S.W.2d 777, 779]; *Hall* v. *Cumberland Pipe Line Co.* (1922) 193 Ky. 728 [237 S.W. 405, 408]; *Giffin* v. *South West Pennsylvania Pipe Lines* (1896) 172 Pa. 580 [33 A. 578, 580].) █ Moreover, statutes are to be interpreted to give a reasonable result consistent with the legislative purpose (*Kusior* v. *Silver* (1960) 54 Cal.2d 603, 620 [7 Cal.Rptr. 129, 354 P.2d 657]), and in furtherance of the purpose of the sections to regulate competition, a pipeline should be subject to the statutory regulation when it competes with other carriers.

The fact that pipelines are not included in the businesses specified as common carriers in section 211 is not determinative, for the term is not limited to enumerated businesses. (*People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 639 [268 P.2d 723].) ▐ Although pipelines were at one time specifically defined by statute as common carriers and the definition was repealed in 1953 subsequent to the adoption of sections 726 and 727 (Stats. 1913, ch. 327, p. 657; Stats. 1953, ch. 596, p. 1844), the repeal cannot be said to show a legislative intent to exclude pipelines from the operation of sections 726 and 727 since those sections use the term "carrier" and not "common carrier."

Even though it appears that the provisions of sections 726 and 727 are applicable to the activities of Pipe Lines, it does not necessarily follow that the petitioning barge lines are entitled to relief in this proceeding.

The barge lines have not sought to obtain permission to reduce their rates to compete with Pipe Lines but have requested the commission to require Pipe Lines to raise its rates for the avowed purpose of encouraging competition. ▐ Under section 727 the direction to the commission to fix rates so that water carriers will be able to compete fairly against land carriers, as we have seen, is applicable only to "the establishment of rates for water carriers."

▐ The language of the code section does not compel the commission to adjust the rates of land carriers in order to permit water carriers to compete. If we were to conclude that to encourage competition the commission was required to raise rates of competing land carriers where the costs of water carriers exceeded those of the land carriers, water carriers by engaging to transport any commodity could require land carriers to raise rates no matter how ill-equipped or inefficient the water carriers might be in transporting the commodity. Such a construction of the section would not only create an administrative aberration, but would be economically unsound at the expense of the consuming public, for land carriers would be deprived of the incentive to improve efficiency and to economize if competing water carriers were not similarly motivated.

Furthermore, a construction of section 727 to require the adjustment of the rates of land carriers for purposes of competition would be contrary to the policy set forth in section 726 where the minimum rate to be fixed by the commission is to be the "lowest of the lawful rates" for any

carrier. ■ Although an exception to the provisions of section 726 is made for water carriers, the exception extends only to ''granting to carriers by water such differentials in rates'' as are permitted by other provisions, and the exception does not extend to requiring land carriers to increase rates.

■ For the foregoing reasons, the commission, under section 727, need not and indeed cannot require land carriers to adjust their rates upward for the purpose of permitting water carriers to compete. The commission found that Pipe Lines' rates were not unreasonable, and we recognize no compulsion to reach a contrary conclusion. ■ As noted above, a majority of the commission, although concluding that section 727 was inapplicable, was unable to agree as to the reason for the inapplicability. Since the question is one of law and one of the reasons offered by the commissioners is valid, the inability to obtain a majority does not require annulment of the commission's order.

■ The commission's refusal to fix a minimum rate under section 726 did not constitute an abuse of discretion. The record shows that the barge lines sought relief under section 727 and did not request the commission to fix its minimum rate under section 726 until after the commission's decision herein.

The order of the commission is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.